ORBY PITMAN, EMPLOYEE v. L. M. CARPENTER & ASSOCIATES, (EMPLOYEE) AND PHOENIX ASSURANCE COMPANY (CARRIER).

(Filed 30 October, 1957)

1. **Master and Servant § 40f—**
   In order to support an award of compensation for silicosis it is necessary that the Industrial Commission find, *inter alia*, that the employee had been exposed to the hazards of silicosis for a minimum of thirty working days during the last seven consecutive months of his employment, G.S. 97-57, and that the employee's work in this State had exposed him to the inhalation of silica dust for a minimum of two years, no part of which two-year period was more than ten years prior to his last exposure. G.S. 97-63.

2. **Master and Servant § 55d—**
   The findings of the Industrial Commission are conclusive when supported by any competent evidence.

3. **Master and Servant § 40f—**
   Conflict in the testimony as to whether plaintiff employee was exposed to the hazards of silica dust in his employment in this State presents an issue of fact for the determination of the Industrial Commission.

4. **Same—**
   The evidence in this case *is held* sufficient to sustain the findings of the Industrial Commission that plaintiff employee was exposed to the hazards of silicosis for a minimum of thirty working days during the last seven consecutive months of his employment and that plaintiff's work in this State exposed him to the hazards of silicosis for a minimum of two years, no part of which two year period was more than ten years prior to his last exposure.

5. **Master and Servant § 55b(1)—**
   Where plaintiff employee is ordered to abstain from employment in an industry having the hazards of silica dust and directed to report for second and third medical examinations, G.S. 97-61.3, G.S. 97-61.4, it is proper that he be awarded the compensation provided by G.S. 97-61.5(b) without consideration of the fact that his condition was complicated by pulmonary tuberculosis, since the total amount of compensation is to be determined on the hearing after the third medical report, G.S. 97-61.6, at which time consideration should be given the tubercular condition of the employee in accordance with the provisions of G.S. 97-65.

APPEAL by defendants from *Phillips, J.,* July Term, 1957 of MITCHELL.

Defendants appeal from a judgment affirming an order of the Industrial Commission awarding compensation to plaintiff, who is suffering from silicosis.

*Warren H. Pritchard for plaintiff appellee.*
*Fouts & Watson for defendant appellants.*

RODMAN, J. To support an award to one suffering from silicosis the Commission must find, *inter alia:* (1) the employee

has been exposed to the hazards of silicosis for a minimum of thirty working days during the last seven consecutive months of his employment, G.S. 97-57, *Bye v. Granite Co.*, 230 N.C. 334, 53 S.E. 2d 274; and (2) plaintiff's work in this State must have exposed him to the inhalation of silica dust for a minimum of two years, no part of which two-year period shall be more than ten years prior to his last exposure, G.S. 97-63; *Hicks v. Granite Corp.*, 245 N.C. 233, 95 S.E. 2d 506; *Midkiff v. Granite Corp.*, 235 N.C. 149, 69 S.E. 2d 166. The Commission found each of these essential facts. The findings were sustained on the appeal to the Superior Court. This appeal again challenges these findings.

Findings of fact by the Industrial Commission are conclusive when supported by any competent evidence. *Mica Co. v. Board of Education*, 246 N.C. 714. Hence the question presented is: Does the record contain any evidence to support the findings made by the Commission?

Our examination of the record convinces us that there is plenary evidence to support each of the challenged findings.

Silicosis is caused by the inhalation of silica dust or silicates. G.S. 97-62. The fact that plaintiff is a victim of silicosis is not challenged. Plaintiff worked for defendant employer from 9 May 1955 to 2 February 1956. His claim was filed 30 April 1956. Dr. C. D. Thomas, a medical expert, testified that mica contains silica, feldspar contains silica. "Silicosis is caused or augmented by the inhalation of free silica of 10 microns or less. It depends on what you call free silica as to whether or not blocks of mica contain free silica."

L. L. McMurray, an expert witness for the defendant, testified: "Silicate is a compound of silica and some other element or elements. Commercial feldspar runs about 65% $SiO_2$, silica. In the colloquial sense flint is entirely free silica . . . Free silica comes with mica and in this case I would say by accident. It is a contaminent accidentally adhering to the mica. It could stick to the mica. I think trace quantities probably could be found in most cases. It is my opinion that if dust came off the mica, from the material that is surrounding the mica as it was taken out of the ground, that the dust would contain free silica."

Plaintiff testified that he was employed for two or three weeks as a rifter or sheeter. Blocks of mica are split with a knife into small sheets by a rifter or sheeter. During the remainder of his employment he acted as a foreman or supervisor whose duties were to go around among the other employees and see that they were properly splitting and trimming the mica for shipment. He worked in a modern three-story building about

60 by 100 feet. The first floor, where he worked, was twelve feet high. He testified: "The scraps would be brought down in the bags in the elevator and were brought down about every other day. When the scraps would come down on the elevator we had to throw them off on the little trucks and roll them out on the truck and it would just be so thick you could see it all over the house. That was mica dust. . . . You couldn't possibly help breathing that dust from the mica when you were in the building. I was in the building all the time and breathed that mica dust every day. The mica was dirty. There was a dirt dust and the mica would have a drill dust. There was flint dust with it. I was referring to the flint dust as drill dust. . . . That flint dust would be in the air most every day I was in there and I would breathe it."

Lewis Edge, a witness for plaintiff, testified: "If the mica was pretty dry there was lots of dust when they were unloading it. I'd say the dust was composed of dirt, rock and mica. It would circulate in the air up to where I was working and I would breathe it. . . . When he was there where I was working the mica dust did circulate in that area and I would breathe it. . . . Two or three times a week sweeping would be started before we quit work. Both Mr. Pitman and I would be there when this was being done. They were sweeping the dust off the floors which must have come from the mica. . . . I know several times when I got home I spit the dust up which I breathed. The sweeping caused it to circulate in the air over the building. . . . All of these operations would cause mica dust to circulate in the air in that room, which was breathed by people in the room."

Dr. Thomas, an expert witness, in response to a hypothetical question propounded to him, expressed the opinion that under the conditions described by the witnesses for plaintiff, plaintiff was subjected to an injurious exposure to silicosis.

The evidence referred to is merely indicative of the evidence offered by plaintiff with respect to the exposure while in the employment of defendants. True, defendants' witnesses expressed the opinion that there was no injurious exposure. This conflict in the testimony merely imposed on the Commission the duty of determining the disputed fact.

Was plaintiff, prior to his employment by defendant, subject to the hazard of silicosis for a period of two years while employed in North Carolina? For six or eight months immediately prior to his employment by defendant he worked at the Wiseman mine in Mitchell County. Prior to his employment there, he worked at a mica house where the work was of the same character done for defendant employer. Prior to this employ-

ment he worked for ten or eleven months in Yancey County. In 1952 he worked five or six months in Franklin, N. C. He worked about three months in Taylorsville, N. C. He worked about a year during 1950 and 1951 at the Ellis mine in Kona in Mitchell County. In each of these employments he breathed mica, flint, and feldspar dust.

It is apparent that there is evidence from which the Commission could find that for more than two years between 1950 and 9 May 1955 plaintiff was employed at work in North Carolina where he breathed mica dust and feldspar dust. Mica and feldspar each contain silica and silicates. Plaintiff's evidence permitted but did not compel the Commission to find that claimant, prior to his employment by defendant, had within ten years immediately prior to such employment been employed in North Carolina under conditions which for more than two years exposed him to the inhalation of the dust of silica or silicates.

The Commissioner found plaintiff's silicotic condition was complicated by pulmonary tuberculosis. This finding was based on the Advisory Medical Committee's report of the first examination (G.S. 97-61.1) made on 26 May 1956. He likewise found as a fact that plaintiff, when he terminated his employment with defendants, had voluntarily removed himself from any occupation which exposed him to the hazards of silicosis.

On these findings the Commissioner concluded that he was not called upon to determine the full extent of plaintiff's disability; that the provisions of G.S. 97-65 should be considered only on the hearing to be held following the third examination by the Advisory Medical Committee, and the compensation provided by G.S. 97-61.5(b) was payable without regard to the complicating factor of tuberculosis. The full Commission affirmed these findings and conclusions.

The award requires defendant to pay compensation for 104 weeks provided plaintiff complies with the Commission's order to abstain from employment in the hazardous industry. It directs plaintiff to report for a second medical examination (G.S. 97-61.3) on 26 May 1957 and a third medical examination (G.S. 97-61.4) on 26 May 1958. It then provides that the Commission shall, following the third medical report, set the cause for hearing to determine what additional compensation, if any, plaintiff is entitled to recover.

Defendants excepted to the conclusions of law and the award based thereon, insisting that a proper construction of G.S. 97-65 required the Commission to consider plaintiff's tubercular condition in directing payment of compensation as provided in G.S. 97-61.5(b).

The slow development, incurable nature, and usual permanence of the disability resulting from asbestosis and silicosis were pointed to in *Honeycutt v. Asbestos Co.*, 235 N.C. 471, 70 S.E. 2d 426, as reasons prompting the Legislature to draw distinctions between the tests for compensation to be paid to an injured employee and a diseased employee suffering from silicosis.

The 1955 Legislature rewrote the statutory provisions relating to compensation payable to employees suffering from silicosis. The definition of "disablement" was modified. G.S. 97-54. Express provision was made for two annual examinations following the examination disclosing disablement on account of silicosis. The statute is explicit in directing payment and the amount thereof during this two-year period. G.S. 97-61.5 (b). This is statutory recognition of the difficulty of effecting a cure and the length of time necessary to ascertain the extent of the disability. For that reason the statute fixes a time in the future when the total amount of compensation will be determined. G.S. 97-61.6. It is at that time the Commission's duty to take into consideration the tubercular condition of the employee and determine in its wisdom the extent to which the provisions of G.S. 97-65 should affect the compensation payable to the employee.

The Commission has correctly interpreted the 1955 statute. The judgment of the Superior Court is

Affirmed.