Preliminarily, plaintiff seeks admission and consideration of certain documents provided by defendants in answer to discovery, which appear to have been kept in the regular course of its business. In light of all of the circumstances, this it not prejudicial to defendants or the interests of justice, and IT IS ORDERED that the documents in the Transcript exhibits as Plaintiff's Exh. 3, pages 12-27, are received into the record. Other documents, if any, which plaintiff intended to reference as in this category have not been presented for consideration.
The parties litigated again the issue of whether "plural plaques" are a form of "asbestosis" within the meaning of N.C. Gen. Stat. §§ 97-53 (24) and 97-62. While a decision on that issue was not necessary in this case, other than to determine descriptions of diseases, it is worthy of discussion because it can seriously affect an award and yet the issue is not always perceived by parties at the critical early stages of gathering evidence.
Mr. Sears suffered from obstructive lung disease caused by cigarette smoking from 1944 until the mid-sixties, and perhaps by an additional period of pipe smoking. This condition disabled him from working in 1987. His occupational exposures to asbestos did not cause, contribute to the development of, nor exacerbate his obstructive lung disease, although it also affected lung function. Dr. Credle, pps. 15 and 18. Asbestos exposure can cause a number of restrictive lung diseases, including parenchymal fibrosis — damaging the gas-exchanging interior of the lung — and "pleural plaques" or stiffening in the pleura that surrounds the lungs due to fibrosis, sometimes with calcification, effecting the "ability of the lung to move within the chest wall". Id., pps. 8-9 and 30. Dr. Credle testified that the former condition was properly described as "asbestosis" — "a much more serious problem, as a rule" — and that the other maladies associated with asbestos exposure are identified in medicine simply as "asbestos-related lung diseases". Id., pps. 9-10, 13, 20, and 29-30. The distinction is important, because while pleural plaques caused by exposure to asbestos may fall within the "catch-all" definition of occupational disease in N.C. Gen. Stat. § 97-53 (13), the Legislature has not only specified that "asbestosis" is an occupational disease (N.C. Gen. Stat. § 97-53 (24)), but chosen to address it statutorily, along with silicosis, with special procedures and remedies.
If determined to have "asbestosis" within the contemplation of the Legislature, a claimant is "remove[d] . . . from any occupation which exposes him to the hazards of asbestosis" — "ordered out of the dust" in the old parlance — and paid 104 weeks of compensation, regardless of wage earning capacity or severity of the disease at the time. N.C. Gen. Stat. § 97-61.5;Pittman v. Carpenter, 247 N.C. 63, 66-67, 100 S.E.2d 231 (1957). In this instance, Dr. Credle was unable to diagnose asbestosis, i.e., pulmonary or parenchymal fibrosis, but concluded that plaintiff had asbestos-related pleural plaques, and that he might suffer "some mild impairment" from that condition. Depo. of Dr. Credle, pp. 16 and 33. Clearly, the evidence failed to show that plaintiff was unable to earn wages as a result of the latter condition. Id., at p. 18. However, he could be entitled to an equitable award for damage to his lungs pursuant to N.C. Gen. Stat. § 97-31 (24), gauged largely on the permanent and possibly progressive nature of the disease, and the increased likelihood of contracting cancer. Depo. of Dr. Credle, pps. 17 and 26.
Plaintiff argues that pleural plaques meets the statutory definition of asbestosis, i.e., "a characteristic fibrotic condition of the lungs caused by the inhalation of asbestos dust". N.C. Gen. Stat. § 97-62. Consistent with Dr. Credle's testimony, opinions rendered by other members of the Commission's Advisory Medical Committee and other "panel physicians" in years past, and prior Commission interpretations of the statute, the Deputy Commissioner held that the plaintiff had not contracted "asbestosis" within the meaning of the North Carolina Workers' Compensation Act. See Mullinax v. Fieldcrest Cannon, Inc., I.C. 752199, 2 October 1989, rev'd on other grounds, 100 N.C. App. 248,250, 395 S.E.2d 160 (1990); Grubbs v. N.C. Equipment Co., I.C. (D.C. O A) 265738 441720, 28 December 1995; but see Pridgen v.E.I. DuPont Nemours Co., I.C. (D.C. O A) 132426, 16 February 1996; N.C. Gen. Stat. § 97-72. Although this has been a recurring controversy — an affidavit from the then-Chairman of the Commission included in the Mullinax record on appeal stressed this — it has not been addressed by our Courts. Interpretation of statutes "may not enlarge the ordinary meaning of terms", and the term "asbestosis" has its origin in the medical field of pathology. Deese v. Southern Lawn and Tree Expert Co., 306 N.C. 275,277, 303 S.E.2d 83 (1982); Random House Unabridged Dictionary
(2nd Ed., 1993). The absence of any contrary opinion on the medical usage of the term supports the Deputy Commissioner's holding.
Based on the decision that pleural plaques were not "asbestosis", the Deputy Commissioner denied the claim. However, he failed to consider whether the asbestos-related condition was an occupational disease. We believe that it was. Depo of Dr. Credle, p. 10.
The question then is whether this defendant is liable for the occupational disease. Defendant argues that there is no convincing evidence that plaintiff was appreciably exposed to asbestos during his employment with the defendant from 1973 through 1987. All of plaintiff's current symptoms may be explained by his intense exposure to airborne asbestos working in Newport News shipyards from 1951 through 1958, and it is almost certain that the pleural plaques began developing then. Tr. Exh. 287; Depo of Dr. Credle, pps. 14 and 21-22. However, the present defendant is liable if the plaintiff was last injuriously exposed in its employment. When the injurious agent is asbestos, the applicable statute provides a conclusive presumption that last injurious exposure occurs when the employee is actually exposed to asbestos "for as much as 30 working days, or parts thereof, within seven consecutive calendar months". N.C. Gen. Stat. § 97-57;Barber v. Babcock Wilcox Constr. Co., 101 N.C. App. 564,400 S.E.2d 735 (1991). Based on the plaintiff's own testimony, even drawing all reasonable inferences and assumptions in his favor — including that all of the materials he worked with and suspected were asbestos were in fact that — we cannot find that he had that degree of exposure. The evidence will not support a finding that asbestos dust was normally in the air where plaintiff worked. See, i.e., Tr. Exh. p. 16. The only task that regularly brought him into contact with suspected asbestos was repairing the incinerator. Between "1975 or 1976" and "about 1980", he did repairs there, "about every two, three months. Sometimes every — sometimes it seem like it was every month." When they did repair it, it took "two or three days. Sometimes it would take a week." These repairs involved replacing "refractory material" lining the inside of the incinerator, which would occasionally burn through in spots. Tr. pps. 15, 18-20, 44. Even assuming that the repairs took a full work week (5 days) each time, skipping repairs for more than one month in any seven month period would mean the exposure fell short of the 30 days in seven months criteria of N.C. Gen. Stat. § 97-57. Although this hot, dirty and dusty job (Tr. pps. 17, 19, 44-46) "sometimes . . . seemed like it was every month", given the purpose of the material and his testimony as a whole, it is logical that plaintiff's statement that repairs were needed "about every two, three months" is a more precise account of the frequency of these repairs. We cannot say that the plaintiff has proven, by the greater weight of the evidence, that he was last injuriously exposed in his employment with the defendant under the criteria set forth in the statutes.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except to MODIFY Finding of Fact #2, the Conclusions of Law, and other minor changes, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
Based upon all the competent evidence in the record the Full Commission makes the following
FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was a sixty-three year old male with an eighth grade education. He obtained a high school diploma by taking courses at a community college. His employment history includes doing a three-year enlistment in the U.S. Marines, working with wood products, working for an awning and tent company, working at the Newport News Shipbuilding as a machinist from February, 1951 to August, 1958, and working for a convenience store as a supervisor for almost fifteen years. While working for these employers, the plaintiff was only exposed to asbestos dust at Newport News Shipbuilding.
2. In September of 1973, plaintiff entered the employment of the defendant. His main job was that of a welder, with the welding taking up 60 to 70% of his time, but he also performed maintenance duties. He worked all over the port area of the defendant, and spent very little time in the shop. While employed by defendant, plaintiff replaced what he suspected were asbestos shingles that had broken off on the outside of the rebuild shop next to the faucet. Plaintiff did not testify to seeing any dust or crumbling, just that the shingles he replaced had been broken off. One day plaintiff fixed a pipe which was next to what he believed was an insulated pipe. Years before the hearing, plaintiff helped to tear down a building. Plaintiff testified he was not certain about materials used to insulate in the building, but there were pipes there. Plaintiff did not indicate a specific time period he worked on this project, but it was not apparently a time-consuming or major project for him. At one point in his employment with defendant, plaintiff used a welding rod called a "fleet weld" on a one-time, trial basis. Plaintiff was not sure the rod contained asbestos, but he thought welding rods at one time did contain asbestos. On one occasion, for approximately thirty minutes, plaintiff helped remove some pipes covered with insulation in an old boiler room. For several years, from approximately 1975 or 1976 to 1980, plaintiff worked every two to three months, usually for two to three days at a time, but sometimes for a week, removing and installing asbestos on an incinerator. Plaintiff used a hammer to remove the asbestos material. He installed the asbestos by mixing asbestos powder with water, and then used a trowel to put it on the incinerator. He was exposed to asbestos dust created by this removal and installation process. In the late 1970's, the plaintiff began to wear a mask at times when doing this job. Sometime in 1980, the plaintiff stopped removing and installing asbestos on the incinerator. In 1983, the plaintiff was moved to a computer job in the supply department in a warehouse, and he remained in that job until he voluntarily left the defendant's employment in September of 1987. There is insufficient evidence of record to prove by its greater weight that plaintiff was exposed to the hazards of asbestosis for any 30 working days, or parts thereof, within any period of seven consecutive calendar months during his employment with defendant.
3. The plaintiff smoked cigarettes from the time he was fourteen years old in 1943, until about 1963, when he began to smoke a pipe. Sometime later the plaintiff returned to smoking cigarettes for awhile. He smoked a pound of tobacco in one or two weeks in 1963, and two packs of cigarettes each day for awhile after 1963.
4. In about 1965, the plaintiff spent about six months in a hospital for possible tuberculosis but this diagnosis was never confirmed. Sometime in the late 1970's, the plaintiff began to have a lung problem and saw Dr. Daniel Gottovi, who eventually referred the plaintiff to Dr. Hunt, who surgically removed a portion of the plaintiff's lung in about 1982. Since then, the plaintiff has been under the care of Dr. Gottovi for a smoking-related obstructive lung disease, to which the subject employment has not contributed. In about September, 1987, the plaintiff retired on disability from the defendant's employment. The plaintiff is presently taking medication which Dr. Gottovi prescribes for this lung condition. He also has arteriosclerotic heart disease with persistent angina.
5. On August 13, 1991, the plaintiff was examined by a member of the Advisory Medical Committee, Dr. W. F. Credle, Jr. The plaintiff had a shortness of breath and gave a history of very extensive exposure to asbestos dust while working at the Newport News Shipyard from 1951 through 1958, in addition to exposure while working for the defendant from 1973 to 1987. The records of Dr. Daniel Gottovi were available for Dr. Credle's review. Chest x-rays revealed bilateral pleural disease. There was no definite finding by x-ray of the early changes of pulmonary fibrosis. Pulmonary function testing revealed some obstructive disease and possibly a mildly restrictive disease process. The chronic obstructive disease is related to cigarette smoking. Lung volumes were within normal limits. The plaintiff had asbestos-related pleural disease. In the opinion of Dr. Credle, the plaintiff had "fairly impressive" x-ray findings of asbestos related pleural disease, but did not have rales or pulmonary function testing evidence of definite pulmonary fibrosis or asbestosis. The plaintiff did not have a significant pulmonary impairment from asbestos related disease according to Dr. Credle. Dr. Credle was not able to say the plaintiff had asbestosis.
* * * * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission conclude as follows
CONCLUSION OF LAW
1. Plaintiff contracted an occupational disease, asbestos related pleural disease, when employed at the Newport News Shipyard. N.C.G.S. § 97-53 (13).
2. Plaintiff was not last injuriously exposed to the hazards of asbestos in the course and scope of employment with the defendant. N.C. Gen. Stat. § 97-57.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusion of law the Full Commission makes the following
AWARD
1. The plaintiff's claim must under the law be, and it is hereby, DENIED.
2. Each side shall pay its own costs.
 S/ ___________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ _______________________ COY M. VANCE COMMISSIONER
S/ _______________________ J. HOWARD BUNN, JR. CHAIRMAN
JRW/jss/md