HORACE K. POPE, JR., EMPLOYEE, Plaintiff, Appellee v. JOHNS MANVILLE, EMPLOYER, ST. PAUL TRAVELERS INDEMNITY COMPANY, CARRIER-DEFENDANT, Defendants-Appellants

No. COA09-281-2

(Filed 21 September 2010)

1. **Workers' Compensation— average weekly wage—remanded— findings of fact to support recalculation**

After considering defendants' petition for rehearing and additional briefs submitted in a workers' compensation case stemming from plaintiff's exposure to asbestos, the Court of Appeals concluded that the Industrial Commission failed to make adequate findings of fact and conclusions of law concerning the calculation of plaintiff's average weekly wage. The case was remanded to the Industrial Commission for recalculation of plaintiff's average weekly wage and appropriate findings of fact to support that recalculation.

Appeal by defendants from Opinion and Award entered 7 November 2008 by the North Carolina Industrial Commission Heard in the Court of Appeals 16 September 2009, with petition for rehearing having been granted 10 March 2010.

*Wallace and Graham, P.A., by Michael B. Pross, and R. James Lore, for Plaintiff-Appellee.*

*Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Deepa P. Tungare and Jeffrey A. Kadis, for Defendant-Appellant.*

*Smith Moore Leatherwood LLP, by Jeri L. Whitfield and Elizabeth Brooks Scherer, for the North Carolina Association of Defense Attorneys, Amicus Curiae.*

ERVIN, Judge.

Defendants Johns Manville and Travelers Indemnity Company appeal from an Opinion and Award entered by the North Carolina Industrial Commission on 7 November 2008, in which the Commission concluded that Plaintiff Horace Pope had been exposed to asbestos during his employment with Defendant Johns Manville; that Plaintiff had contracted asbestosis; that Plaintiff was disabled; and that Plaintiff should be awarded $399.06 per week in disability benefits, medical expenses, and attorneys' fees. On 19 January 2010, this Court filed an opinion in *Pope v. Johns Manville*, N.C. App. ——, —— S.E.2d

———, 2010 N.C. App. LEXIS 75 (Jan. 19, 2010) (unpublished), in which we affirmed the Commission's Opinion and Award in its entirety.

On 23 February 2010, Defendants filed a petition for rehearing pursuant to N.C.R. App. P. 31. In their rehearing petition, Defendants contended that we erred in our original opinion by upholding the Commission's weekly benefit award because the Commission had erred in calculating Plaintiff's average weekly wages. More particularly, Defendants asserted that this Court erred by (1) upholding the Commission's calculation of Plaintiff's weekly wages "under N.C. Gen. Stat. § 97-61.5 and case law under that statute, as opposed to N.C. Gen. Stat. § 97-54 and 97-64," and by (2) upholding "a sweeping award of benefits by using greater wages from a different subsequent employment to calculate Plaintiff's average weekly wage." On 17 March 2010, we granted Defendants' petition for the purpose of reconsidering our decision to affirm the Commission's calculation of Plaintiff's average weekly wage.  After careful consideration of Defendants' rehearing petition and the additional briefs which we requested in our order granting Defendants' rehearing petition, we now conclude that the Commission erred in its determination of Plaintiff's average weekly wage and remand this case to the Commission for further proceedings, including, if necessary, findings of fact and conclusions of law concerning whether, "for exceptional reasons," the Commission is required to calculate Plaintiff's average weekly wage by employing "such other method of computing average weekly wages . . . as will most nearly approximate the amount which the injured employee would be earning were it not for the injury." N.C. Gen. Stat. § 97-2(5) (2009). Except for our resolution of this issue, we adhere to the remainder of our previous opinion in this matter.

## I. Factual and Procedual Background

The facts of this case are set out in our previous opinion, *Pope v. Johns Manville*, and we will not restate them in detail here. At the most basic level, the evidence received before the Commission tended to show that Plaintiff was 80 years old at the time of the Commission's decision. Plaintiff had worked from 1 January 1949 to 1 January 1950 and from 1 August 1952 to 31 August 1968 at a Johns Manville facility in Marshville, North Carolina. During his employment at Johns Manville, Plaintiff worked in all areas of the facility without wearing breathing protective equipment. In the course of his employment at the Johns Manville plant, Plaintiff was exposed to asbestos

fibers. Plaintiff stopped working at Johns Manville in August 1968. After leaving Johns Manville, Plaintiff worked for various employers until 1986, when he began raising turkeys on a full-time basis. Plaintiff worked as a self-employed turkey farmer from 1986 until his retirement in 2003, at which point he was 75 years old. In 2005, Plaintiff was diagnosed with asbestosis.

On 24 May 2005, Plaintiff filed an Industrial Commission Form18 for the purpose of seeking workers compensation medical and disability benefits stemming from asbestosis. Plaintiff's claim was heard before a Deputy Commissioner, who awarded Plaintiff disability and medical benefits. Defendants appealed the Deputy Commissioner's Opinion and Award to the Full Commission. On 7 November 2008, the Commission entered an Opinion and Award that affirmed the Deputy Commissioner's decision. Defendants noted an appeal from the Commission's order to this Court.

On appeal, Defendants advanced several challenges to the lawfulness of the Commission's decision. First, Defendants argued that the Commission erred by finding and concluding that Plaintiff had contracted asbestosis. After carefully examining the record, we determined that the evidence supported the Commission's conclusion that Plaintiff suffered from asbestosis. Next, Defendants asserted that the Commission erred by considering the testimony of Dr. Jill Ohar on the grounds that Plaintiff had failed either to identify her as an expert witness prior to the hearing or to include her among the expert witnesses listed in a pre-trial agreement. In response, we concluded that Defendants were not entitled to relief on appeal as a result of the inclusion of Dr. Ohar's testimony in the record given that Defendants had been afforded ample opportunity to address the issues raised by Dr. Ohar's testimony and given that any error that the Commission might have committed in considering Dr. Ohar's testimony had been rendered harmless by the Commission's finding that, "[e]ven if Dr. Ohar's testimony were not considered pursuant to defendants' objection, the greater weight of the competent evidence showed that plaintiff contracted asbestosis." Thirdly, Defendants argued that the Commission erred by concluding that Plaintiff was disabled given that he had not been diagnosed with asbestosis when he stopped working in 2003. In rejecting Defendants' argument, we concluded that the Commission's findings were sufficient to support its conclusion that Plaintiff was permanently disabled and entitled to receive disability benefits.

POPE v. JOHNS MANVILLE

[207 N.C. App. 157 (2010)]

In their final challenge to the Commission's decision, Defendants argued that the Commission erroneously calculated Plaintiff's average weekly wage. In its Opinion and Award, the Commission established the amount of weekly disability payment to which Plaintiff was entitled based on the amount he earned as a turkey grower during the year immediately prior to his retirement. In support of their challenge to the Commission's decision with respect to this issue, Defendants asserted that:

> The Industrial Commission's determination that Plaintiff's average weekly wage should be based upon earnings from 2003 is . . . flawed because in 2003 Plaintiff had not developed the disease. At the time of the alleged "diagnosis," Plaintiff's wages were zero, and, therefore, his loss of earning power was zero.

In other words, Defendants contended that, because Plaintiff had not been diagnosed with asbestosis until after his retirement, he was not entitled to any disability compensation whatsoever. However, "Defendant[s] cite[d] no authority for the proposition that a claimant cannot recover for an occupational disease if he has voluntarily retired prior to filing a claim, and long-established precedent to the contrary clearly establishes that a claimant is not barred from receiving workers' compensation benefits for an occupational disease solely because he or she was retired." *Austin v. Cont'l Gen. Tire,* 185 N.C. App. 488, 495, 648 S.E.2d 570, 575, *disc. review denied,* 361 N.C. 690, 652 S.E.2d 255 (2007) (*Austin II*). Alternatively, Defendants argued that:

> . . . N.C. Gen. Stat. § 97-54 references the wages that an employee was earning at the time of [his] "last injurious exposure," which . . . would have to be the wages [Plaintiff] earned in 1967, his last full year of employment with [Defendant.]

As a result, Defendants argued that the Commission erred by awarding a weekly disability payment that was not based exclusively on Plaintiff's earnings during the last year that he worked at the Johns Manville facility. In our original opinion, we upheld the Commission's calculation of Plaintiff's average weekly wage in reliance on *Abernathy v. Sandoz Chems./Clariant Corp.,* 151 N.C. App. 252, 565 S.E.2d 218, *cert. denied and disc. review denied,* 356 N.C. 432, 572 S.E.2d 421 (2002), and *Moore v. Standard Mineral Co.,* 122 N.C. App. 375, 469 S.E.2d 594 (1996). In essence, we concluded in our original opinion that "*Moore* holds that the average weekly wage of a plaintiff for the purpose of determining benefits under *N.C. Gen. Stat. § 97-61.5*

was the wage earned by the plaintiff as of the time of injury[,]" that *"Abernathy* extends the ruling of *Moore* by stating that 'it would be obviously unfair to calculate plaintiff's benefits based on his income upon the date of diagnosis because he was no longer employed and was not earning an income,' " so that " 'the only fair method for determining his average weekly wage is using his latest full year of employment,' " Pope, —— N.C. at ——, —— S.E.2d ——, 2010 N.C. App. LEXIS at *41-42 (quoting Abernathy, 151 N.C. App. at 259, 565 S.E.2d at 222); and that the Commission appropriately "followed the approach approved in *Abernathy* and calculated a weekly compensation rate of $399.06 based on the wages that Plaintiff earned during his last full year of employment." *Id.* at ——, —— at S.E.2d at ——, 2010 N.C. App. LEXIS *42.

On rehearing, Defendants argue that (1) our previous decision with respect to the average weekly wage issue was erroneous because it relied on cases construing N.C. Gen. Stat. § 97-61.5 (2009) despite the fact that this statutory provision had no application to the present case because Plaintiff had not been removed from his employment due to asbestosis; (2) Plaintiff's average weekly wage should be based on his earnings in 1967, which was the last year of his employment by Defendant Johns Manville; and (3) North Carolina law precludes the Commission from calculating Plaintiff's average weekly wage by reference to the wages Plaintiff earned while working for any employer other than Defendant Johns Manville. On rehearing, we conclude that the Commission failed to make adequate findings and conclusions concerning the issues involved in determining Plaintiff's average weekly wage and that this case should be remanded to the Commission for further proceedings not inconsistent with this opinion.

## II. Legal Analysis

### A. Introduction

Defendants' rehearing petition did not challenge any portion of our initial opinion except for our decision to affirm the Commission's calculation of the <u>amount</u> of Plaintiff's average weekly wages, a figure which is used to establish Plaintiff's weekly disability benefit payment. Accordingly, the only issue that we need to address on rehearing is the correctness of the Commission's calculation of Plaintiff's average weekly wage. In order to properly resolve this issue, we must review certain basic principles concerning the calculation of disability benefits under the Workers' Compensation Act.

The amount of disability benefits to which an injured worker is entitled under the Workers' Compensation Act is addressed in N.C. Gen. Stat. § 97-29 (2009), which provides, in pertinent part, that:

> Except as hereinafter otherwise provided, where the incapacity for work resulting from the injury is total, the employer shall pay . . . to the injured employee during such total disability a weekly compensation equal to sixty-six and two-thirds percent (66⅔%) of his average weekly wages. . . .

The provisions of N.C. Gen. Stat. § 97-29 have been applied to the determination of disability benefits for workers diagnosed with asbestosis. *See, e.g., Bolick v. ABF Freight Sys., Inc.,* 188 N.C. App. 294, 654 S.E.2d 793 (awarding compensation for asbestosis pursuant to N.C. Gen. Stat. § 97-29), *disc. review denied,* 362 N.C. 233, 659 S.E.2d 436 (2008). The specific challenge advanced by Defendants in opposition to the Commission's calculation of disability benefits rests on the contention that the Commission erroneously determined Plaintiff's "average weekly wages" as defined in N.C. Gen. Stat. § 97-2(5).

According to N.C. Gen. Stat. § 97-2(5):

> (5) Average weekly wages.—shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury . . . divided by 52; but if the injured employee lost more than seven consecutive calendar days at one or more times during such period, although not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. Where the employment prior to the injury extended over a period of fewer than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained. Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community.

POPE v. JOHNS MANVILLE

[207 N.C. App. 157 (2010)]

> But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

According to the Supreme Court, N.C. Gen. Stat. § 97-2(5) "sets forth in priority sequence five methods by which an injured employee's average weekly wages are to be computed," "establishes an order of preference for the calculation method to be used," and provides that "the primary method, set forth in the first sentence, is to calculate the total wages of the employee for the fifty-two weeks of the year prior to the date of injury and to divide that sum by fifty-two." *McAninch v. Buncombe County Schools*, 347 N.C. 126, 129, 489 S.E.2d 375, 377 (1997) (citing *Hensley v. Caswell Action Comm., Inc.*, 296 N.C. 527, 533, 251 S.E.2d 399, 402 (1979)). The Commission always retains the right, however, to utilize the final method of calculating an employee's average weekly wage, which allows the use of whatever computation method would "most nearly approximate the amount which the injured employee would be earning were it not for the injury," in extraordinary circumstances in which the use of the first four methods will produce an unfair result.

### B. Disability Benefits for Asbestosis

Asbestosis is listed as a compensable occupational disease in N.C. Gen. Stat. § 97-53(24) (2009). "The general provisions of our Workmen's Compensation Act were originally enacted for the purpose of providing compensation for industrial accidents only." *Honeycutt v. Carolina Asbestos Co.*, 235 N.C. 471, 475, 70 S.E.2d 426, 429 (1952). "When it became apparent that the Act should include a provision for payment of compensation to employees disabled by diseases or abnormal conditions of human beings *the causative origin of which was occupational in nature,* the legislature adopted in 1935 what is now codified as [N.C. Gen. Stat. §] 97-52 [*et seq.*]." *Morrison v. Burlington Indus.*, 304 N.C. 1, 12, 282 S.E.2d 458, 466 (1981).

> The provisions with respect to occupational diseases were enacted later. And while occupational diseases, as well as ordinary industrial accidents, are now recognized as a proper expense of industry, the manner in which disability is brought about by an occupational disease is so inherently different from an ordinary accident, it is sometimes difficult to administer the law with respect to such disease under machinery adopted for the purpose

of administering claims growing out of ordinary accidents. In such circumstances it becomes the duty of the courts to give effect to obvious legislative intent.

*Honeycutt,* 235 N.C. at 475-76, 70 S.E.2d at 429 (citation omitted).

The Supreme Court also observed that:

> An employee does not contract or develop asbestosis or silicosis in a few weeks or months. These diseases develop as the result of exposure for many years to asbestos dust or dust of silica. Both diseases, according to the textbook writers, are incurable and usually result in total permanent disability.

*Id.* at 476-77, 70 S.E.2d at 430. "The slow development, incurable nature, and usual permanence of the disability resulting from asbestosis and silicosis were pointed to in *[Honeycutt]* as reasons prompting the Legislature to draw distinctions between the tests for compensation to be paid to an injured employee and a diseased employee suffering from silicosis." *Pitman v. L.M. Carpenter & Asssocs.,* 247 N.C. 63, 67, 100 S.E.2d 231, 234 (1957).

As the cases discussed in the preceding paragraph suggest, workers' compensation claims arising from occupational diseases may present distinct factual issues that arise from the long latency period between initial exposure and subsequent diagnosis with a disease. For example, a plaintiff may, as in this case, be diagnosed with asbestosis years after leaving the employment in which his or her exposure to asbestos occurred or after he or she has retired from all employment. In view of the difference between occupational disease claims and claims arising from work-related accidents, the General Assembly has enacted a number of specific statutory provisions applicable to asbestos-related workers' compensation claims.

N.C. Gen. Stat. § 97-55 (2009) defines "disability" as "the state of being incapacitated as the term is used in defining 'disablement' in [N.C. Gen. Stat. §] 97-54." (Emphasis added). N.C. Gen. Stat. § 97-54 (2009), in turn, states that:

> The term "disablement" as used in this Article as applied to cases of asbestosis and silicosis means the event of becoming actually incapacitated because of asbestosis or silicosis to earn, in the same or any other employment, the wages which the employee was receiving at the time of his last injurious exposure to asbestosis or silicosis; but in all other cases of occupational

disease "disablement" shall be equivalent to "disability" as defined in [N.C. Gen. Stat. §] 97-2(9).

Thus, "unlike the case of disablement from other occupational diseases, disablement from silicosis and asbestosis is measured from the time a claimant can no longer work at dusty trades, not from the time he can no longer work at any job." *Taylor v. J. P. Stevens & Co.*, 300 N.C. 94, 100, 265 S.E.2d 144, 147 (1980). For that reason:

> [i]n order to support a conclusion that a claimant is totally and permanently disabled by exposure to asbestos, and entitled to benefits under N.C. Gen. Stat. § 97-29 (2005) the Commission must find that the claimant is totally unable, . . . "as a result of the injury arising out of and in the course of his employment," . . . "to earn, in the same or any other employment, the wages which the employee was receiving at the time of his last injurious exposure to asbestosis or silicosis," N.C. Gen. Stat. § 97-54 (2005).

*Estate of Gainey v. Southern Flooring & Acoustical Co.*, 184 N.C. App. 497, 503, 646 S.E.2d 604, 608 (2007) (quoting *Frazier v. McDonald's*, 149 N.C. App. 745, 752, 562 S.E.2d 295, 300 (2002), *cert. denied*, 356 N.C. 670, 577 S.E.2d 117 (2003)).

Although the General Assembly enacted a specific definition of "disability" for use in evaluating asbestosis claims, N.C. Gen. Stat. § 97-64 (2009) explicitly provides that the calculation of the amount of disability compensation awarded in cases involving asbestosis should be the same as the amount awarded for all other causes of disability:

General provisions of act to control as regards benefits

Except as herein otherwise provided,[1] in case of disablement or death from silicosis and/or asbestosis, compensation shall be payable in accordance with the provisions of the North Carolina Workers' Compensation Act.

N.C. Gen. Stat. § 97-64 (emphasis added). Thus, "the general rule [is] that an employee becoming disabled by asbestosis or silicosis within

---

1. "The exceptions to which N.C. [Gen. Stat.] § 97-64 refers are found in N.C. [Gen. Stat.] §§ 97-61.1 through -61.7[, which] establish a series of examinations . . . of 'an employee [who] has asbestosis or silicosis[.]' . . . 'If the Industrial Commission finds . . . that the employee has either asbestosis or silicosis . . . it shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis or silicosis . . . [and] shall pay or cause to be paid . . . to the employee affected by such asbestosis

the terms of the specific definition embodied in [N.C. Gen. Stat. §] 97-54, should be entitled to ordinary compensation measured by the general provisions of the Workmen's Compensation Act." *Young v. Whitehall Co.*, 229 N.C. 360, 366, 49 S.E.2d 797, 801 (1948). As a result, given his asbestos-related disability, Plaintiff is entitled to compensation determined in accordance with N.C. Gen. Stat. § 97-29 and § 97-2(5).

In our original opinion, we noted that, for purposes of determining disability benefits for asbestosis, the "time of the injury" is deemed to be the date that a claimant is diagnosed withthe disease. "This Court, in *Moore v. Standard Mineral Company*, 122 N.C. App. 375, 469 S.E.2d 594 (1996), held that the proper date for determining the average weekly wage of a plaintiff . . . was as of the time of injury, which was deemed to be the date of diagnosis of silicosis or asbestosis."[2] *Abernathy*, 151 N.C. App. at 257, 565 S.E.2d at 221. *See also Wilder v. Amatex Corp.*, 314 N.C. 550, 560, 336 S.E.2d 66, 72 (1985), holding that, for purposes of determining the date upon which the statute of limitations for an occupational disease claim begins to run, the date of injury was the date of diagnosis:

> [T]he legislature and the Court have recognized that exposure to disease-causing agents is not itself an injury. . . . Although persons may have latent diseases of which they are unaware, it is not possible to say precisely when the disease first occurred in the body. The only possible point in time from which to measure the "first injury" in the context of a disease claim is when the disease is diagnosed.

In their original appeal, Defendants argued that, since Plaintiff was no longer working at the time that he was diagnosed with asbestosis, he was not entitled to disability benefits, an argument that is premised on equating the date of "injury" with the date of diagnosis. Similarly, on rehearing, Defendants do not dispute that the date of

---

or silicosis a weekly compensation equal to sixty-six and two-thirds percent (66 ⅔%) of his average weekly wages before removal from the industry . . . which compensation shall continue for a period of 104 weeks.' "*Clark v. ITT Grinnell Indus. Piping, Inc.*, 141 N.C. App. 417, 429, 539 S.E.2d 369, 376 (2000) (quoting N.C. Gen. Stat. § 97-61.1; N.C. Gen. Stat. § 97-61.5(b) (1991), *remanded for reconsideration in light of Austin v. Continental General Tire*, 354 N.C. 344, 553 S.E.2d 680 (2001). As Plaintiff was not "removed" from his employment, these statutory provisions have no application to the present situation.

2. The Plaintiff in *Moore* sought disability compensation under N.C. Gen. Stat. § 97-61.5, while Plaintiff in this case is entitled to compensation pursuant to N.C. Gen. Stat. § 97-64. However, our holding to the effect that the date of diagnosis was the date of injury did not hinge upon the identity of the statute under which the plaintiff claimed the right to compensation.

Plaintiff's "injury" is the same as the date of diagnosis. As Defendants have observed, Plaintiff was earning no wages at that time. For that reason, in the event that the Commission were to utilize any of the first four methods of determining average weekly wages enunciated in N.C. Gen. Stat. § 97-2(5), Plaintiff would not be entitled to any disability benefits at all. However, as we have already noted, N.C. Gen. Stat. § 97- 2(5) also provides that:

> [W]here for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

According to the Supreme Court, however:

> The final method, as set forth in the last sentence, clearly may not be used unless there has been a finding that unjust results would occur by using the previously enumerated methods. Ultimately, the primary intent of this statute is that results are reached which are fair and just to both parties. . . . "Ordinarily, whether such results will be obtained . . . is a question of fact; and in such case a finding of fact by the Commission controls decision."

*McAninch*, 347 N.C. at 130, 489 S.E.2d at 378 (citing *Wallace v. Music Shop, II, Inc.*, 11 N.C. App. 328, 181 S.E.2d 237 (1971), and quoting *Liles v. Faulkner Neon & Elec. Co.*, 244 N.C. 653, 660, 94 S.E.2d 790, 795-96 (1956)). As a result, in the event that the Commission elects to employ an alternative method for calculating a claimant's average weekly wage and fails to make findings of fact addressing the issue of whether "unjust results would occur by using the previously-enumerated methods," *Id.*, its order is affected with legal error, and the case must be remanded for further proceedings. *See, e.g., Boney v. Winn Dixie, Inc.*, 163 N.C. App. 330, 333, 593 S.E.2d 93, 96 (2004) (remanding for additional findings where the "Commission did not clearly state what method it used to calculate decedent's average weekly wage").

### C. Analysis of the Commission's Decision

As we have already noted, application of the first four methods for computing average weekly wages set out in § 97-2(5) would preclude Plaintiff from receiving any disability benefits. The Commission, however, found in its order that "Plaintiff earned $31,127.00 the last year he worked . . .[,] [which] is sufficient for a compensation rate of $399.06[,]" and ordered that "Defendants shall pay

total disability benefits in the amount of $399.06 per week[.]" Thus, it is clear that the Commission calculated Plaintiff's average weekly wage by reference to his earnings during his last year of employment. The only way in which the Commission could have reached this result is through reliance on the final computation method set forth in N.C. Gen. Stat. § 97-2(5). The Commission did not, however, offer any justification for the adoption of this approach in its Opinion and Award.

We cannot conclude that, under all circumstances and regardless of the Commission's findings of fact, an approach to calculating average weekly wages utilizing the fifth method of computation specified in N.C. Gen. Stat. § 97-2(5) that does not rely upon the amount that Plaintiff earned while working for the employer in whose employment he or she was exposed to asbestos would never be permissible. On the contrary, the literal language of the fifth approach authorized by N.C. Gen. Stat. § 97-2(5) would appear to allow the use of any method of computing average weekly wages that would "most nearly approximate the amount which the injured employee would be earning were it not for the injury."

In *Abernathy*, a case with certain factual similarities to this case, this Court upheld an approach to calculating average weekly wages that bears some resemblance to that adopted by the Commission in this case. In *Abernathy*, the plaintiff was diagnosed with asbestosis following his retirement. This Court noted that, under N.C. Gen. Stat. § 97-2(5), the Commission could employ a non-standard method of calculating wages in the event that it found that the use of any other method specified in N.C. Gen. Stat. § 97-2(5) would produce an unjust result. In addition, we stated that:

> In the present case, it would be obviously unfair to calculate plaintiff's benefits based on his income upon the date of diagnosis because he was no longer employed and was not earning an income. And, since the General Assembly has made no specific provision for determining compensation pursuant to [N.C. Gen. Stat.] § 97-64 when a former employee is diagnosed with asbestosis some time after his removal from the employment, the only statutory provision which may in fairness be used is the method recited above.

*Abernathy*, 151 N.C. App. at 258, 565 S.E.2d at 222. However, the Commission's Opinion and Award in this case does not contain findings indicating that it considered using the other methods for computing the average weekly wage and stating the reason that it

declined to use them in determining the amount of weekly disability benefits which Plaintiff was entitled to receive. In addition, the Commission's Opinion and Award lacks the required finding that use of the first four methods of calculating average weekly wages set out in N.C. Gen. Stat. § 97-2(5) "would be unfair, either to the employer or employee." Assuming that the Commission was attempting to utilize the fifth method for calculating average weekly wages set out in N.C. Gen. Stat. § 97-2(5) in order to determine the amount of compensation to which Plaintiff was entitled, its failure to make the findings and conclusions required as a precondition for use of that computational method constituted an error of law. As a result, given the Commission's failure to make the necessary factual findings and legal conclusions, we are compelled to "remand this case to the Commission for recalculation of [Plaintiff's] average weekly wage and appropriate findings of fact to support that recalculation." *Boney*, 163 N.C. App. at 334-35, 593 S.E.2d at 97. On remand, the parties are free to advocate the use of whatever method of computing average weekly wages they deem appropriate, and the Commission must make adequate findings and conclusions supporting the method of calculation it ultimately deems appropriate.

## D. Other Issues

In their rehearing petition and supplemental brief, Defendants have advanced a number of arguments that are inconsistent with the result we have reached on rehearing. In the course of deciding this case, we have carefully considered each of Defendants' arguments. However, except to the extent that we have explicitly adopted Defendants' arguments elsewhere in this opinion, we find them to be unpersuasive.

First, Defendants argue that this Court erroneously calculated Plaintiff's average weekly wage in its original opinion by relying on the provisions of N.C. Gen. Stat. § 97-61.5. We agree with Defendants that Plaintiff's claim for workers' compensation benefits is not governed by N.C. Gen. Stat. § 97-61.5, since Plaintiff was not removed from the employment in which he was subject to exposure to asbestos. However, we did not rely on N.C. Gen. Stat. § 97-61.5 for the purpose of ascertaining the amount of weekly disability benefits to which Plaintiff was entitled in our original opinion and we have not relied on N.C. Gen. Stat. § 97-61.5 for that purpose on rehearing.

In addition, Defendants argue that N.C. Gen. Stat. § 97-54 "mandates" that disability benefits for asbestosis be limited to the amount

earned by the claimant at the time of his "last injurious exposure," even if that exposure occurred decades before Plaintiff's diagnosis. More specifically, Defendants contend that N.C. Gen. Stat. § 97-54 "eliminates the potential need . . . for analysis under N.C. Gen. Stat. § 97-2(5);" that, under N.C. Gen. Stat. § 97-54, "the employer in whose employment the employee was 'last injuriously exposed' pays the claim at the wages applicable at that time;" and that, if N.C. Gen. Stat. § 97-54 and N.C. Gen. Stat. § 97-64 are considered in *pari materia*, one must inevitably conclude that N.C. Gen. § 97-54, which defines disablement, also controls the amount of disability compensation to which the claimant is entitled.

Defendants have not, however, cited any authority that utilizes the phrase "wages which the employee was receiving at the time of his last injurious exposure to asbestosis" as it appears in the definition of disability set out in N.C. Gen. Stat. § 97-54 for the purpose of establishing the amount of disability benefits to which a claimant suffering from asbestosis is entitled. The absence of any indication in the relevant statutory language that the language that Defendants have taken from N.C. Gen. Stat. § 97-54 plays any role in calculating the level of disability benefits that should be awarded to a claimant who has been diagnosed as suffering from asbestosis militates strongly against the validity of Defendants' argument. Moreover, the General Assembly has demonstrated the ability to enact provisions that are specifically applicable to asbestosis and silicosis claims. Had the General Assembly wished to require the use of a specific method for calculating disability benefits for claimants suffering from asbestosis, it could and would have done so. Instead, the plain language of N.C. Gen. Stat. § 97-64, which states that, "in case of disablement or death from silicosis and/or asbestosis, compensation shall be payable in accordance with the provisions of the North Carolina Workers' Compensation Act," explicitly rejects the use of a separate and distinct method for calculating disability benefits in asbestosis cases. Thus, we conclude that N.C. Gen. Stat. § 97-54 does not control the calculation of the disability benefits that should be paid to a claimant suffering from asbestosis and that the statutory reference to the "wages which the employee was receiving at the time of his last injurious exposure to asbestosis" in N.C. Gen. Stat. § 97-54 is merely part of the definition of "disablement."

Furthermore, Defendants argue that the Commission was barred by applicable precedent from basing the calculation of Plaintiff's average weekly wage on the wages paid by any employer other than

the one in whose employment he was last injuriously exposed to asbestos. In support of this position, Defendants cite cases such as *McAninch*, and *Barnhardt v. Yellow Cab Co.*, 266 N.C. 419, 146 S.E.2d 479 (1966). In both of these cases, the claimant had multiple employers during the 12 month period utilized to determine his or her average weekly wage. In such circumstances, the Supreme Court has clearly held that the Commission cannot, even if it relies on the fifth method for determining a claimant's average weekly wage set out in N.C. Gen. Stat. § 97-2(5), make the necessary calculation by <u>aggregating</u> or <u>combining</u> his wages from more than one job. Aside from prohibiting the Commission from utilizing wages from multiple jobs to calculate a claimant's average weekly wage, neither *McAninch* nor *Barnhardt* limits the evidence upon which the Commission is entitled to rely in attempting to "approximate the amount which the injured employee would be earning were it not for the injury" during its application of the fifth method for calculating average weekly wages set out in N.C. Gen. Stat. § 97-2(5).

In addition, Defendants cite *Barnhardt* in support of their contention that "it would be unfair to require an employer to pay workers' compensation benefits in excess of the payroll insured by the insurance carrier." Defendants argue that requiring them to pay disability calculated on the basis of Plaintiff's earnings in 2003 is "a situation which could not have been predicted or bargained for at the time Carrier-Defendant entered into a contract of insurance with Employer-Defendant." In essence, Defendants argue that requiring them to pay disability based on 2003 earnings is an unfair impairment of their right to contract, an argument that the Supreme Court of North Carolina rejected in *Wood v. J. P. Stevens & Co.*, 297 N.C. 636, 256 S.E.2d 692 (1979).

In *Wood*, the defendants "denied liability on the ground that the . . . occupational disease was not covered by the Workmen's Compensation Act as it existed at the time the disease was contracted." *Id.* at 638, 256 S.E.2d at 694. The Commission ruled that the plaintiff's claim was governed by the workers' compensation law when she left her employment in 1958, which was several decades before the date upon which she sought workers' compensation benefits. On appeal, the Supreme Court noted that disablement from an occupational disease triggered the right to compensation and concluded that "it follows that the employee's right to compensation in cases of occupational disease should be governed by the law in effect

at the time of disablement." *Id.* at 644, 256 S.E.2d at 698. In reaching this conclusion, the Court noted that

> Courts in a few jurisdictions have refused to apply the law in effect at the time of disability in cases where the statute granting recovery was enacted after the claimant terminated his employment. This result has been justified on the grounds that to hold otherwise would be to allow an impairment of contract.

*Id.* at 648, 256 S.E.2d at 700 (citations omitted). However, the Supreme Court rejected this argument, stating that:

> Although superficially appealing, this interpretation does not withstand close analysis. The Workmen's Compensation Act is often spoken of as being part of the employment contract. However, the relationship between a covered employer and employee is clearly not contractual in the usual sense of that term.
>
> . . .
>
> The liability of the employer under our Workmen's Compensation Act arises not from the individual employment contract but from the Act itself.
>
> . . .
>
> "The net result . . . is that the workmen's compensation 'contract' includes everything that the Legislature and the courts say it shall include, whether added before or after the injury." . . .
>
> . . . "In a certain limited sense, the rights and liabilities arise out of contract, on the theory that the statute becomes a part of the contract of employment . . . but, strictly speaking, such rights and liabilities are created independently of any actual or implied contract and, pursuant to the police power, are imposed upon the employment status or relationship as a cost of industrial production."

*Id.* at 648-50, 256 S.E.2d at 700-01 (quoting *McAllister v. Board of Education*, 79 N.J. Super. 249, 259-60, 191 A. 2d 212, 217-18 (1963), *aff'd*, 42 N.J. 56, 198 A. 2d 765 (1964), and *Todeva v. Oliver Iron Mining Co.*, 232 Minn. 422, 428, 45 N.W. 2d 782, 787-88 (1951)).

We conclude that the reasoning set out in *Wood* is equally applicable to the issue of the calculation of an asbestosis claimant's disability benefits. As is discussed in more detail above: (1) N.C. Gen. Stat. § 97-64 directs that disability benefits be calculated for claimants suffering from asbestosis under the same rules as those

applicable to other claimants and (2) N.C. Gen. Stat. § 97-2(5) defines the manner in which average weekly wages are to be calculated. Given the long latency period for asbestosis, it is inevitable that claimants may leave the employment in which they are exposed to asbestos years, even decades, before they are diagnosed. As discussed in *Abernathy*, this situation may justify the use of an alternative approach for calculating the claimant's average weekly wage. Since North Carolina law plainly allows the use of alternative computation methods in certain circumstances and in the event that proper procedures are followed in order to "approximate the amount which the injured employee would be earning were it not for the injury," N.C. Gen. Stat. § 97-2(5), and since the provisions of N.C. Gen. Stat. § 97-2(5) as they existed at the time of Plaintiff's "disablement" apply to Plaintiff's claim in accordance with the logic of *Wood*, we do not find Defendants' insurance rate-based claim persuasive.[3]

Finally, we note that, in an *amicus curiae* brief, the North Carolina Association of Defense Attorneys argues that (1) the Commission erred by calculating Plaintiff's disability benefits based on his employment following his last injurious exposure to asbestos and that (2) the Commission erred by failing to apportion Plaintiff's disability award among his asbestosis and "other disabling non-work-related conditions." For reasons we have already discussed, we do not find the first argument advanced in the *amicus curiae* brief persuasive. Moreover, the second issue was not advanced in Defendants' petition for rehearing or in Defendants' original brief on appeal and is not, for that reason, properly before us. *See* N.C.R. App. P. 31(d) (stating that on rehearing "briefs shall be addressed solely to the points specified in the order granting the petition to rehear"). Thus, except to the extent set forth above, we are not persuaded by Defendant's challenges to the Commission's order.[4]

---

3. As an aside, we note that the economic arguments based on the amount of insurance premiums paid by Defendant Johns Manville to Defendant St. Paul can cut both ways, given the time value of money as applied to the insurance payments made from Defendant Johns Manville to Defendant St. Paul.

4. Similarly, we are not persuaded by Plaintiff's argument that Defendants failed to preserve their challenge to the Commission's decision concerning the calculation of average weekly wages for appellate review. As we read the record, Defendants challenged the lawfulness of the method ultimately utilized for the purpose of calculating Plaintiff's average weekly wages on appeal from the Deputy Commissioner's Opinion and Award, which is all that we believe Defendants were obligated to do. Thus, we decline Plaintiff's request that we refuse to consider Defendants' arguments on the merits.

**IN RE WILL OF BAITSCHORA**

[207 N.C. App. 174 (2010)]

## III. Conclusion

As a result, for the reasons discussed above, we adopt our original opinion except for that portion which affirmed the Commission's calculation of Plaintiff's average weekly wage. With respect to that issue, we conclude that the Commission erred by failing to adopt one of the first four methods for calculating claimant's average weekly wage set out in N.C. Gen. Stat. § 97-2(5) without making sufficient findings and conclusions to allow use of the fifth method for calculating a claimant's average weekly wage set out in that statutory provision. As a result, we remand this case to the Commission for reconsideration of the amount of weekly disability benefits to which Plaintiff is entitled, with instructions that the Commission should reconsider the method of calculating the average weekly wage to be utilized in determining Plaintiff's weekly disability benefit payment and make any findings and conclusions that are necessary for the implementation of the calculation method that it ultimately deems appropriate.

AFFIRMED IN PART, REMANDED IN PART.

Judges GEER and STROUD concur.