An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-90

NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

SHIRLEY LIPE, Widow and Executrix
of the Estate of ROSS IDDINGS
LIPE, Deceased Employee,
     Plaintiff

v.                                    North Carolina
                                      Industrial Commission
                                      I.C. No. 429068

STARR DAVIS COMPANY, INC.,
Employer, TRAVELERS CASUALTY &
SURETY (as Successor to AETNA
CASUALTY & SURETY COMPANY),
Carrier,
     Defendants.


Appeal by Defendant from opinion and award entered 30 September 2013 by the North Carolina Industrial Commission. Heard in the Court of Appeals 5 May 2014.

> *Wallace and Graham, P.A., by Michael B. Pross, for Plaintiff.*

> *Hedrick Gardner Kincheloe & Garofalo, LLP, by Hatcher Kincheloe, Sarah P. Cronin, and M. Duane Jones, for Defendant Travelers Casualty & Surety.*


DILLON, Judge.


Travelers Casualty & Surety ("Defendant") appeals from an opinion and award of the Full Commission of the North Carolina

Industrial Commission ("Full Commission" or "Commission") ordering that Defendant pay death benefits to Shirley Lipe ("Plaintiff"), widow of Ross Iddings Lipe ("Decedent"). For the following reasons, we affirm.

## I. Factual & Procedural Background

Decedent was employed by Starr Davis Company, Inc. ("SDC")[1] from 10 March 1975 to 1 July 1991, when Decedent became disabled due to multiple sclerosis and was no longer able to work. In January 1994, Decedent was diagnosed with asbestosis. Decedent filed an occupational disease claim with the Commission, which, by opinion and award entered 24 August 1999, awarded Decedent benefits of $404.24 per week, based on an average weekly wage of $606.36. The Full Commission did *not* base Decedent's average weekly wages upon his wages at the time he was diagnosed with asbestosis in 1994 – which would have been zero, as Decedent had been out of work since July 1991 – but instead calculated Decedent's average weekly wages based upon his wages earned during his last full year of employment with SDC. This Court affirmed the Full Commission's 24 August 1999 opinion and award in *Lipe v. Starr Davis Co.*, 142 N.C. App. 213, 543 S.E.2d 533 (2001).

---

[1] SDC is no longer in existence, and is thus only nominally a Defendant for purposes of this appeal.

In February 2010, Decedent was diagnosed with lung cancer. He died less than two months later, as a result of his lung cancer, on 11 April 2010. Plaintiff thereafter filed a claim with the Commission seeking death benefits based on Decedent's development of lung cancer through his asbestos exposure while working at SDC. Defendant conceded the compensability of Plaintiff's claim, but agreed to payments of only $30.00 per week, the statutory minimum under N.C. Gen. Stat. § 97-38. Defendant believed, and maintains, that the statutory minimum payout is appropriate given that Decedent was not working – and thus had earnings of zero – at the time he was diagnosed with lung cancer.

Plaintiff's claim was addressed on stipulated facts by Deputy Commissioner J. Brad Donovan. The Deputy Commissioner entered an opinion and award on 14 March 2013 in which he determined that Plaintiff was entitled under N.C. Gen. Stat. § 97-2(5) to benefits of $404.24 per week for 400 weeks. Defendant appealed to the Full Commission, which, following a hearing on the matter, entered an opinion and award consistent with the Deputy Commissioner's decision in all material respects. The Full Commission articulated two alternative bases for its decision: (1) that the question concerning the manner of

calculating Decedent's average weekly wages had been previously raised and addressed in its 24 August 1999 opinion and award, and Defendant was thus collaterally estopped from re-litigating the issue; and (2) that, even if collateral estoppel did not apply, the fifth of the five permissible methods of calculating average weekly wages under N.C. Gen. Stat. § 97-2(5) permitted the Full Commission to reach the same result – specifically, to calculate Decedent's average weekly wages based on his last full year of employment with SDC.  From this opinion and award, Defendant appeals.

## II. Analysis

### A. Standard of Review

In reviewing an opinion and award of the Full Commission, this Court must determine whether competent evidence supports the Commission's findings of fact and whether those findings so supported are sufficient, in turn, to support the Commission's conclusions of law.  *Legette v. Scotland Mem'l Hosp.*, 181 N.C. App. 437, 442, 640 S.E.2d 744, 748 (2007).  Findings supported by competent evidence are binding on appeal, "even if the evidence might also support contrary findings.  The Commission's conclusions of law are reviewable *de novo*."  *Id.* at 442-43, 640 S.E.2d at 748 (citations omitted).

## B. Decedent's "Average Weekly Wages"

Defendant contends that the Commission erred in its computation of Decedent's average weekly wages for purposes of Plaintiff's death benefits claim. Specifically, Defendant contends that the Commission should have determined Decedent's compensation rate based on his earnings at the time of his injury – i.e., in 1994 when he was diagnosed with asbestosis – of zero. Accordingly, Defendant argues, the applicable compensation rate used to determine Plaintiff's benefits should have been the statutory minimum of $30.00 per week. We disagree.

N.C. Gen. Stat. § 97-38 provides that death benefits are payable to a person "wholly dependent for support upon the earnings of the deceased employee" as follows:

> If death results proximately from a compensable injury or occupational disease and within six years thereafter, or within two years of the final determination of disability, whichever is later, the employer shall pay or cause to be paid, subject to the provisions of other sections of this Article, weekly payments of compensation equal to sixty-six and two-thirds percent (66 ⅔ %) of the *average weekly wages* of the deceased employee at the time of the accident, but not more than the amount established annually to be effective October 1 as provided in G.S. 97-29, nor less than thirty dollars ($30.00), per week[.]

N.C. Gen. Stat. § 97-38(1) (2013) (emphasis added). The employee's "average weekly wages" may be calculated using one of the five methods described under N.C. Gen. Stat. § 97-2(5):

> . . . "Average weekly wages" shall mean the earnings of the injured employee in the employment in which the employee was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury, . . . divided by 52; but if the injured employee lost more than seven consecutive calendar days at one or more times during such period, although not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. Where the employment prior to the injury extended over a period of fewer than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained. Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community.
>
> But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate

> the amount which the injured employee would
> be earning were it not for the injury.

N.C. Gen. Stat. § 97-2(5) (2013). Our Supreme Court has stated that "[t]his statute sets forth in priority sequence five methods by which an injured employee's average weekly wages are to be computed" and that it "establishes an order of preference for the calculation method to be used," with the "primary method" being that "set forth in the first sentence, [i.e.,] to calculate the total wages of the employee for the fifty-two weeks of the year prior to the date of injury and to divide that sum by fifty-two." *McAninch v. Buncombe County Sch.*, 347 N.C. 126, 129, 489 S.E.2d 375, 377 (1997). Notwithstanding, "[t]he Commission always retains the right . . . to utilize the final method [under N.C. Gen. Stat. § 97-2(5)] of calculating an employee's average weekly wage, which allows the use of whatever computation method would 'most nearly approximate the amount which the injured employee would be earning were it not for the injury,' in extraordinary circumstances in which the use of the first four methods will produce an unfair result." *Pope v. Manville*, 207 N.C. App. 157, 163, 700 S.E.2d 22, 27 (2010). Should the Commission seek to utilize this fifth method, however, our Courts have made clear that the Commission must make specific findings indicating, essentially, that it has

adopted that method only after its careful consideration of the other methods:

> The final method, as set forth in the last sentence [of N.C. Gen. Stat. § 97-2(5)], clearly may not be used unless there has been a finding that unjust results would occur by using the previously enumerated methods. Ultimately, the primary intent of this statute is that results are reached which are fair and just to both parties. "Ordinarily, whether such results will be obtained . . . is a question of fact; and in such case a finding of fact by the Commission controls decision."

*McAninch*, 347 N.C. at 130, 489 S.E.2d at 378 (citations omitted) (ellipsis in original).

In *Pope v. Manville*, 207 N.C. App. 157, 700 S.E.2d 22, this Court considered the Commission's use of the fifth method – and the findings required of the Commission to support use of that method – under circumstances similar to those presented in the instant case. The *Pope* "Defendants contended that, because Plaintiff had not been diagnosed with asbestosis until after his retirement, he was not entitled to *any* disability compensation whatsoever." *Id.* at 160, 700 S.E.2d at 25 (emphasis in original). This Court stated that "for purposes of determining disability benefits for asbestosis, the 'time of the injury' is deemed to be *the date that a claimant is diagnosed with the disease*" and, further, that "the proper date for determining the

average weekly wage of a plaintiff . . . was as of the time of injury, which was deemed to be *the date of diagnosis of silicosis or asbestosis.*'" *Id.* at 166, 700 S.E.2d at 28-29 (citations omitted) (emphasis added) (ellipsis in original). We reasoned that the Commission had not erred in calculating the plaintiff's average weekly wages based on the last full year of his employment – in accordance with the fifth method under N.C. Gen. Stat. § 97-2(5) – rather than based on his wages at the time of his diagnosis, as "'it would be obviously unfair to calculate plaintiff's benefits based on his income upon the date of diagnosis because he was no longer employed and was not earning an income.'" *Id.* at 168, 700 S.E.2d at 30 (citation omitted). Notwithstanding the foregoing analysis, however, we ultimately remanded the case back to the Commission on grounds that its opinion and award did "not contain findings indicating that it considered using the other methods for computing the average weekly wage and stating the reason that it declined to use them in determining the amount of weekly disability benefits" and "lack[ed] the required finding that use of the first four methods of calculating average weekly wages set out in N.C. Gen. Stat. § 97-2(5) 'would be unfair, either to the employer or employee.'" *Id.* at 168-69, 700 S.E.2d at 30

(quoting N.C. Gen. Stat. § 97-2(5)). *Pope* thus stands for the proposition that the Commission may properly employ the fifth method under N.C. Gen. Stat. § 97-2(5) to calculate the employee's average weekly wages in cases where the employee was diagnosed with a compensable occupational disease after retirement, so long as the Commission sets forth the requisite findings in its opinion and award.

In the present case, as in *Pope*, the employee (Decedent) developed a compensable occupational disease years after his retirement, when he was no longer earning wages. Unlike in *Pope*, however, we believe that in this case the Commission included sufficient supportive findings in its opinion and award concerning its decision to utilize the fifth method of calculating Plaintiff's average weekly wages under N.C. Gen. Stat. § 97-2(5). Specifically, in addition to the parties' stipulation that Decedent had been employed by SDC from 10 March 1975 through 1 July 1991, the Commission made the following pertinent findings:

> 1. The current matter before the Full Commission involves a claim for death benefits due to lung cancer resulting from [Decedent's] exposure to asbestos while in the employment of [SDC]. On February 24, 2010, Decedent was diagnosed with lung cancer. On April 11, 2010, Decedent died as a result of his lung cancer.

. . . .

12. With respect to [Decedent's] lung cancer, the facts are analogous to his prior asbestos claim, with the exception that the lung cancer took a longer period to develop. [Decedent] was last injuriously exposed to the hazards of asbestos while employed by [SDC]. [Decedent's] lung cancer was caused by the same period of asbestos exposure that caused his compensable occupational disease of asbestosis. [Decedent] was not diagnosed with lung cancer until after his retirement from [SDC]. At the time of his diagnosis, [Decedent] had already been disabled by unrelated multiple sclerosis that forced him to retire from [SDC] in 1991. [Decedent] amended the Form 18B originally filed on April 18, 1994 to include a claim for lung cancer due to asbestos exposure and Defendants accepted the lung cancer claim as compensable.

. . . .

15. Based upon the preponderance of evidence in view of the entire record, the Full Commission finds that the first three methods of determining average weekly wage pursuant to N.C. Gen. Stat. § 97-2(5) are not applicable because they are based on the earnings of an injured employee during the fifty-two weeks preceding the date of injury or disability and [Decedent] had been retired for many years prior to his diagnosis of lung cancer and his death. The Full Commission further finds no evidence was presented by the parties regarding the average weekly wage earned by a similarly-situated employee; therefore, the fourth method of calculating average weekly wage cannot be used. Additionally, the Full Commission finds that it would be unfair and

unjust to calculate [Decedent's] average weekly wage based upon his date of diagnosis or date of death as he was no longer employed and was not earning any income at either of those times. Therefore, using the first four methods to determine [Decedent's] average weekly wage would result in [Decedent's] dependents receiving no benefits (except the $30.00 weekly statutory minimum) and the Full Commission finds that such a result would be unfair and unjust.

16. Since the utilization of the first four methods for determining average weekly wages enunciated in N.C. Gen. Stat. § 97-2(5) are not applicable, the Full Commission finds that the fifth method under the statute, which allows "any other method of calculation," is the most appropriate method to calculate [Decedent's] average weekly wage. Due to the exceptional reasons and circumstances of this claim, [Decedent's] average weekly wage should be calculated based upon the earnings of [Decedent] during his last year of employment with [SDC], divided by fifty-two weeks, as it would most nearly approximate the amount which [Decedent] would have earned if not for his injury while working for [SDC] and is fair and just. During the last full year of his employment with [SDC], [Decedent] earned $31,530.89 resulting in an average weekly wage of $606.36 and a weekly compensation rate of $404.24.

The foregoing findings of fact reflect the Commission's careful consideration in determining which of the five methods of calculating Decedent's average weekly wages was appropriate under the circumstances. These findings also disclose the Commission's reasoned justification for choosing to employ the

fifth method over the first four.  Guided by *Pope*, we hold that these findings are sufficient to support the Commission's calculation method and, moreover, that the Commission correctly determined Decedent's average weekly wages to be $606.36, yielding a corresponding weekly compensation rate of $404.24. Defendant's contentions are accordingly overruled.[2]

## III. Conclusion

In light of the foregoing, we affirm the Commission's 30 September 2013 opinion and award.

AFFIRMED.

Chief Judge MARTIN and Judge STEELMAN concur.

Report per Rule 30(e).

---

[2] We note the Commission's alternative basis for its calculation of Decedent's wages, namely, that it had employed the same method in deriving Decedent's wages in connection with his asbestos claim; that this Court had affirmed the Commission's opinion and award pertaining to that claim; and that Defendant here is essentially re-litigating the same calculation issue. We do not reject this alternative basis as meritless, but instead decline to reach the issue in light of our holding, which we believe rests firmly upon *Pope*, a case decided subsequent to the 2001 decision in which we upheld Decedent's asbestos claim.