IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-285

Filed: 2 February 2016

From the North Carolina Industrial Commission, I.C. No. Y21219

ANTONIO PICKETT, Employee, Plaintiff,

v.

ADVANCE AUTO PARTS, Employer, ACE AMERICAN INSURANCE COMPANY, Carrier (SEDGWICK CMS, Third-Party Administrator), Defendants.

Appeal by defendants from Opinion and Award of the North Carolina Industrial Commission entered 15 October 2014 by Commissioner Danny Lee McDonald. Heard in the Court of Appeals 9 September 2015.

> *The Quinn Law Firm, by Nancy P. Quinn, for employee, plaintiff-appellee.*
>
> *McAngus, Goudelock & Courie, P.L.L.C., by Carolyn T. Marcus, for employer and third-party administrator, defendant-appellants.*

McCULLOUGH, Judge.

Advance Auto Parts ("employer") and ACE American Insurance Company ("carrier") through Sedgwick CMS ("administrator") (together "defendants") appeal from an opinion and award of the North Carolina Industrial Commission (the "Commission") awarding worker's compensation benefits in favor of Antonio Pickett ("employee"). For the following reasons, we affirm.

I.     Background

Employee was employed by employer as a salesperson and driver and was working in the Advance Auto Parts store on Randleman Road in Greensboro on the

morning of 3 September 2012 when an armed robbery occurred at the store. That morning, shortly after nine o'clock, the perpetrator entered the store, pointed a gun at employee, and demanded money. While the perpetrator pointed the gun at employee, the general manager, the only other person in the store at the time, removed the cash drawers from several registers and placed them on the counters. The perpetrator then grabbed the money and fled. Following the robbery, plaintiff complained of chest pains and a throbbing headache but was required by the assistant manager to work the remainder of his shift. Employee has not returned to work since that day.

Subsequent to the robbery, employee sought treatment from Dr. Dean, employee's primary care physician, from Dr. Morris, a psychologist, and from other medical professionals for symptoms including discomfort, vision and hearing loss, arm weakness, elevated blood pressure, chest pain, and various psychological issues. Dr. Dean and Dr. Morris both diagnosed employee as suffering from post-traumatic stress disorder as a result of the 3 September 2012 robbery.

On 10 September 2012, a representative of employer completed a Form 19 reporting employee's injury to the Commission. In that form, employer documented that it knew of employee's injury on 3 September 2012 and disability began on 6 September 2012. On 24 October 2012, employer completed a Form 22 documenting the days worked by employee and employee's earnings. Employee completed a

Form 18 on 18 December 2012 and initiated a workers' compensation claim for a psychological injury resulting from the robbery by filing the Form 18 with the Commission on 21 December 2012. Employer denied employee's workers' compensation claim in a Form 61 dated 16 January 2013. In denying employee's claim, employer reasoned that it "[had] not received any records that support that any indemnity ore [sic] medical benefits are causally related to the incident that occurred on [3 September 2012]." Upon employer's denial of his claim, employee filed a Form 33 request that his claim be assigned for hearing, which the Commission received on 4 February 2013. Employer responded by Form 33R dated 14 February 2013.

Employee's case was assigned and came on for hearing before Deputy Commissioner Keischa M. Lovelace in Pittsboro on 29 August 2013. At the hearing, the Deputy Commissioner heard testimony from employee and the general manager. The record was then left open to allow the parties time to take additional testimony and to submit contentions, briefs, and proposed opinions and awards. The record was closed on 10 February 2014. By that time, the record included deposition testimony from Dr. Dean and Dr. Morris, both of whom diagnosed employee with post-traumatic stress disorder.

On 11 March 2014, the Deputy Commissioner filed an opinion and award in favor of employee. Defendants gave notice of appeal from the Deputy Commissioner's opinion and award on 27 March 2014.

Following the filing of a Form 44 by defendants and briefs by both sides, employee's case came on for hearing before the Full Commission on 11 August 2014. Upon review of the Deputy Commissioner's opinion and award, the record of the proceedings before the Deputy Commissioner, and the briefs and arguments of the parties, the Full Commission filed an opinion and award on 15 October 2014 affirming the Deputy Commissioner's opinion and award. Specifically, the Full Commission granted employee's "claim for worker's compensation benefits for injuries sustained on 3 September 2012" and ordered defendants to pay as follows: (1) "temporary total disability compensation in the amount of $163.66 beginning 3 September 2012 and continuing until [employee] returns to work or further Order of the Commission[;]" (2) a reasonable attorney's fee as directed; (3) "all related medical or psychological treatment incurred or to be incurred for plaintiff's psychological conditions which are reasonably necessary to effect a cure, provide relief and/or lessen the period of disability . . . [;]" and (4) "the hearing costs to the . . . Commission in the amount of $220.00."

Defendants gave notice of appeal from the Full Commission's opinion and award on 14 November 2014.

II.     Discussion

Review of an opinion and award of the Commission "is limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law. This '[C]ourt's duty goes no further than to determine whether the record contains any evidence tending to support the finding.' " *Richardson v. Maxim Healthcare/Allegis Grp.*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008) (citation omitted) (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)). "The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Anderson*, 265 N.C. at 433-34, 144 S.E.2d at 274. The Commission's conclusions of law are reviewed *de novo*. *Coffey v. Weyerhaeuser Co.*, 218 N.C. App. 297, 300, 720 S.E.2d 879, 881 (2012).

1.     Compensability

In the first issue on appeal, defendants contend the Commission erred in determining employee met his burden to establish a compensable injury. Specifically, defendants contend employee failed to present sufficient competent evidence to establish that his injuries were causally related to the 3 September 2012 robbery.

For an injury to be compensable under The North Carolina Workers' Compensation Act ("the Act"), it must be an injury by accident arising out of and in the course of the employment. N.C. Gen. Stat. § 97-2(6) (2013); see *also Click v. Pilot*

*Freight Carriers, Inc.*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). This Court has

acknowledged that "a mental or psychological illness may be a compensable injury[.]"

*Bursell v. General Elec. Co.*, 172 N.C. App. 73, 78, 616 S.E.2d 342, 346 (2005). "The

burden of proving each and every element of compensability is upon the plaintiff."

*Harvey v. Raleigh Police Dept.*, 96 N.C. App. 28, 35, 384 S.E.2d 549, 553, *disc. review*

*denied*, 325 N.C. 706, 388 S.E.2d 454 (1989). Our Supreme Court has explained as

follows regarding causation:

> There must be competent evidence to support the inference
> that the accident in question resulted in the injury
> complained of, *i.e.*, some evidence that the accident at least
> might have or could have produced the particular disability
> in question. The quantum and quality of the evidence
> required to establish *prima facie* the causal relationship
> will of course vary with the complexity of the injury itself.
> There will be many instances in which the facts in evidence
> are such that any layman of average intelligence and
> experience would know what caused the injuries
> complained of. On the other hand, where the exact nature
> and probable genesis of a particular type of injury involves
> complicated medical questions far removed from the
> ordinary experience and knowledge of laymen, only an
> expert can give competent opinion evidence as to the cause
> of the injury.

*Click*, 300 N.C. at 167, 265 S.E.2d at 391 (internal quotation marks and citations

omitted).

> However, when such expert opinion testimony is based
> merely upon speculation and conjecture, . . . it is not
> sufficiently reliable to qualify as competent evidence on
> issues of medical causation. The evidence must be such as
> to take the case out of the realm of conjecture and remote
> possibility, that is, there must be sufficient competent

evidence tending to show a proximate causal relation.

*Holley v. ACTS, Inc.*, 357 N.C. 228, 232, 581 S.E.2d 750, 753 (2003) (internal

quotation marks and citations omitted).

The admission of expert testimony is governed by Rule 702 of the North

Carolina Rules of Evidence. That rule provides in pertinent part as follows:

> (a) If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply:
>
> (1) The testimony is based upon sufficient facts or data.
>
> (2) The testimony is the product of reliable principles and methods.
>
> (3) The witness has applied the principles and methods reliably to the facts of the case.

N.C. Gen. Stat. § 8C-1, Rule 702 (2013).

In this case, after issuing findings regarding the evaluation and treatment of

employee by Dr. Dean and Dr. Morris, the Full Commission made the following

findings regarding causation:

> 16. Dr. Dean opined to a reasonable degree of medical certainty, and the Commission finds, that the 3 September 2012 robbery was an acute event that was the main cause of [employee's] acute anxiety and post-traumatic stress disorder. Dr. Dean also opined to a reasonable degree of medical certainty, and the Commission finds, that the acute anxiety, stress, blood pressure elevation, and reliving the robbery were a

significant component to [employee's] chest symptoms. [Employee's] hearing loss and vision/perception issues were most consistent with a conversion reaction, "where your body responds physically to something that's completely emotional -- emotionally distressing, but not really based on something neurological that we could diagnose." Dr. Dean opined to a reasonable degree of medical certainty, and the Commission finds, that [employee's] conversion reaction was caused by the 3 September 2012 robbery.

. . . .

27. Dr. Morris opined to a reasonable professional certainty that [employee's] PTSD was caused by the 3 September 2012 robbery, which further bolsters Dr. Dean's causation opinion regarding the same.

The Commission then concluded as follows:

7. On 3 September 2012, [employee] sustained a compensable injury by accident arising out of the course and scope of his employment with defendant-employer as the result of an armed robbery occurring at the store where [employee] was working. The circumstances of [employee's] injury on 3 September 2012 constituted an interruption of his normal work routine and the introduction thereby of unusual circumstances likely to result in unusual results. [Employee] sustained an injury by accident arising out of and in the course of his employment with defendant-employer resulting in mental injury. Based upon the preponderance of the evidence in view of the entire record, including Dr. Dean's causation opinions and Dr. Morris' diagnoses, [employee] has proven that his post-traumatic stress disorder and other psychological problems, including his conversion reaction, were caused or aggravated by the 3 September 2012 injury by accident.

Defendants now challenge the portions of this conclusion relating to causation by attacking the competency of Dr. Morris' and Dr. Dean's expert testimony and the credibility of employee. We address these issues in reverse of the order defendants raise them on appeal.

Defendants challenge the Commission's reliance on Dr. Dean's and Dr. Morris' opinions in part because "[their] decisions regarding [employee's] diagnosis were based on [employee's] subjective complaints[,]" which defendants assert are not credible because "[employee] exaggerated his version of the incident . . ., failed to reveal evidence of his prior workers' compensation claim, and tried to deny pre-existing conditions . . . ." Specifically, defendants assert that "[employee] did not present as a credible witness and therefore, the information which he presented to his physicians cannot be trusted." We hold this challenge to employee's credibility is extremely injudicious.

As noted above, it is a well settled principal in workers' compensation cases that "[t]he Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Anderson*, 265 N.C. at 433-34, 144 S.E.2d at 274. In this case, it is clear the Commission found employee to be credible as the Commission concluded in conclusion number two that "[employee's] testimony regarding the circumstances of the 3 September 2012 armed robbery and [employee's] statements to his health care providers regarding his physical and psychological

condition following the armed robbery are found to be credible and convincing." This Court will not second-guess the Commission's credibility determination. Furthermore, we will not hold that the testimony of Dr. Dean and Dr. Morris is incompetent on the basis that Dr. Dean and Dr. Morris relied on employee's statements.

Concerning Dr. Dean's medical opinion as to causation, defendants contend the Commission erred in relying on Dr. Dean's opinion because there was an insufficient basis for the opinion. Although Dr. Dean testified to a reasonable medical certainty that employee's anxiety, PTSD, cardiac symptoms, and loss of vision and hearing were the result of the robbery after examining, diagnosing, and treating employee, defendants contend "Dr. Dean's opinions are undermined by his own testimony, which establishes that his impressions of [employee's] symptoms and their cause are based solely on [employee's] own reports and the temporal link between the incident and their onset." We are not persuaded by defendants' arguments.

At the outset, we reiterate that the Commission found employee to be credible and convincing. Thus, Dr. Dean did not err in relying on employee's statements in forming his opinion on the cause of employee's symptoms.

As to the temporal component of defendants' argument, defendants rely on *Young v. Hickory Bus. Furniture*, 353 N.C. 227, 538 S.E.2d 912 (2000). In *Young*, our Supreme Court noted that the "Commission's findings of fact with regard to the cause

of [an employee's] fibromyalgia were based entirely upon the weight of [a rheumatologist's] opinion testimony as an expert in the fields of internal medicine and rheumatology." *Id.* at 230, 538 S.E.2d at 914-15. Upon review of the rheumatologist's deposition testimony, the sole evidence pertaining to the rheumatologist's opinion, the Court held the rheumatologist's opinion in 1995 that the employee's fibromyalgia was likely related to the employee's 1992 work-related back injury was based entirely upon conjecture and speculation, and therefore was not competent evidence of causation. *Id.* at 231, 538 S.E.2d at 915. The Court explained that the rheumatologist had testified about the difficulty in ascribing a cause for fibromyalgia because of its uncertain etiology and had "acknowledged that he knew of several other potential causes of [the employee's] fibromyalgia" but "he did not pursue any testing to determine if they were, in fact, the cause[.]" *Id.* Where the record supported "at least three potential causes of fibromyalgia . . . other than [the employee's] injury in 1992[,]" *id.* at 232, 538 S.E.2d at 916, the Court held the rheumatologist's reliance on the maxim "*post hoc, ergo propter hoc*," meaning "after this, therefore because of this[,]" to assign a cause or aggravation of fibromyalgia was improper. *Id.* The Court reasoned that "[i]n a case where the threshold question is the cause of a controversial medical condition, the maxim of '*post hoc, ergo propter hoc*,' is not competent evidence of causation[]" because the maxim "assumes a false connection between causation and temporal sequence." *Id.*

Upon review of the facts of the present case, we are not convinced that *Young* is controlling. First, the present case is distinguishable from *Young* because this case involves the diagnosis of a psychological injury with resultant physical symptoms. It is obvious to this Court that temporal sequence or proximity is not only relevant, but a necessary consideration in diagnosing psychological conditions such as *post-traumatic stress disorder*. (Emphasis added). Second, Dr. Dean did not merely rely on the temporal link. It is clear from Dr. Dean's testimony and the Commission's findings based on Dr. Dean's testimony that Dr. Dean relied on employee's account of the robbery and his symptoms to assign a cause to employee's psychological and physical symptoms. Dr. Dean described how employee was anxious as he relived the robbery in vivid detail. Moreover, Dr. Dean was able to rule out other potential causes of employee's symptoms. Dr. Dean testified that employee's neurological symptoms were not consistent with a neurological exam, leading to initial diagnoses of an acute stress reaction and early conversion reaction. Furthermore, upon employee's complaints of chest pain, a cardiac catheterization was performed which revealed there were no cardiac causes for employee's chest pain. Dr. Dean then testified again that employee's symptoms were likely the result of a conversion reaction – a physical response to something completely emotional. Although Dr. Dean had been employee's primary care physician for years and treated employee for various health issues prior to the robbery, including fluctuating blood pressure, anxiety, depression, and back

pain, Dr. Dean's testimony clearly linked employee's psychological and physical symptoms, or the exacerbation of those symptoms, in the months following the 3 September 2012 robbery to that event.

Considering that Dr. Dean's impressions were formed based on his impressions of employee's account of the robbery and his symptoms, the exclusion of other potential causes, and the temporal link between the occurrence of the symptoms and the robbery, we hold Dr. Dean's testimony was not based merely on speculation and conjecture; there was a sufficient basis for Dr. Dean's expert opinion testimony as to the cause of employee's injuries. Consequently, the Commission did not err in relying on Dr. Dean's testimony regarding causation.

Dr. Dean's testimony alone would have been sufficient to support the Commission's determination that employee suffered a compensable injury. Yet, as the Commission found, Dr. Morris' causation opinion bolsters Dr. Dean's opinion.

In challenging the Commission's reliance on Dr. Morris' testimony as to the cause of employee's injuries, defendants contend the Commission erroneously found and concluded that Dr. Morris is an expert in psychology and erroneously relied on Dr. Morris' testimony as evidence of causation. Defendants rely solely on Rule 702 and *Young*. Again, we are not persuaded by defendants' arguments.

Concerning the designation of Dr. Morris as an expert in psychology, the Commission found and concluded that Dr. Morris was an expert after summarizing Dr. Morris' education and experience in finding of fact eighteen as follows:

> After obtaining his Ph.D., Dr. Morris has served as the assistant director of counseling at Purdue University, as an inpatient psychologist with the VA Hospital in Wisconsin, and as the clinical director of the mental health division of Child and Family Services in Raleigh, North Carolina. After moving to Charlotte, Dr. Morris became a member of the clinical faculty in the psychology department at UNC-Charlotte and served as the chief psychologist at Carolinas Medical Center with the responsibility of directing outpatient services. Dr. Morris has also served as a director of counseling centers in Iowa and Maryland and taught at the doctoral level in Oregon.

Defendants do not dispute that finding of fact eighteen is supported by Dr. Morris' deposition testimony; in fact, defendants acknowledge that Dr. Morris additionally testified that he was trained and licensed to diagnose and treat patients. Instead, defendants attempt to lessen the relevance of Dr. Morris' credentials in the present case by pointing out that the subject of Dr. Morris' doctoral dissertation, "if there was a correlation between the race of the teacher and students' perceptions of the classroom environment[,]" is of no significance in this case and by pointing out that, although Dr. Morris has worked in various positions, Dr. Morris has not worked in any position very long. Defendants do not cite any authority to support the suggestion that the subject of Dr. Morris' doctoral dissertation or the length of time that Dr. Morris worked at each position prevent Dr. Morris from qualifying as an

expert in psychology. Moreover, it is clear to this Court that the Commission did not err in determining Dr. Morris to be an expert in psychology. The Commission's designation is supported by Dr. Morris' education and experience as set forth in finding of fact eighteen.

Yet, even if Dr. Morris was properly accepted as an expert, defendants further contend the Commission erred in relying on Dr. Morris' causation opinion because Dr. Morris' testimony did not meet the requirements of Rule 702. Specifically, defendants contend Dr. Morris failed to provide sufficient facts and data to support his opinion and failed to demonstrate that his testimony was based on reliable principles and methods applied to the facts of the case. Defendants further assert that it is suspicious that Dr. Morris initially provided only one medical report and later produced undetailed records after defendants filed a motion to compel. Defendants contend the lack of detailed records indicates that Dr. Morris did not maintain medical records throughout the treatment of employee. Thus, defendants contend Dr. Morris' testimony is not credible and should be given no weight.

Upon review of the record, we hold the Commission did not err. We further note that defendants' contention that Dr. Morris did not keep medical records is speculative and not supported by the evidence.

Dr. Morris testified concerning his evaluations of employee that led to the post-traumatic stress disorder diagnosis, beginning with Dr. Morris' initial assessment of

employee on 10 October 2012. Based on Dr. Morris' testimony, the Commission made

finding of fact twenty-three summarizing Dr. Morris' treatment. Finding of fact

twenty-three provides as follows:

> 23. Throughout the fall of 2012, [employee] had weekly therapy sessions with Dr. Morris. During these sessions, Dr. Morris used clinical interviews, behavioral observations, and psychological diagnostic tools to develop a diagnosis and treatment recommendations. In a 24 January 2013 report, Dr. Morris comprehensively summarized his assessment and observations. Dr. Morris concluded that "it is an understatement to say that [employee] needs therapy." [Employee] needs professional assistance to address his post-traumatic stress disorder symptoms and to restore his sense of personal and professional pride. Dr. Morris explained:
>
>> The robbery has destabilized his emotional groundedness to the point where he experiences an unhealthy level of hypervigilance when confronted with individuals or situations that remind[] him of the situation, and a perpetual sense of unease when feeling overwhelmed by multiple stressors. Without therapy, and possibly medication, [employee] will be at considerable risk for further emotional, vocational, and social deterioration.
>
> Dr. Morris explained that hypervigilance is when a person is constantly looking around the room, taking everything in, trying to locate each door or each chair. A person with PTSD is hypervigilant as they are looking for a way to escape in case something occurs.

This finding is supported by evidence in the record and we hold this finding is

sufficient to support the Commission's reliance on Dr. Morris' testimony as evidence

of causation.

Where Dr. Dean and Dr. Morris both provided competent expert testimony as to the cause of employee's injuries based on their evaluations and treatment of employee, the Commission did not err in relying on their opinions in determining that employee suffered a compensable injury. We will not second-guess the Commission's credibility determinations and the weight it assigned to testimony.

## 2. Continuing Disability

As detailed in the background above, the Commission ordered defendants to pay "temporary total disability compensation in the amount of $163.66 beginning 3 September 2012 and continuing until [employee] returns to work or further Order of the Commission." Even though we have held the Commission did not err in determining employee suffered a compensable injury, defendants contend that employee failed to establish disability lasting beyond 31 October 2012. Thus, defendants contend the Commission erred in awarding temporary total disability benefits beyond 31 October 2012.

In the Act, "[t]he term 'disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9). The employee bears the burden of proving disability. *Russell v. Lowes Prod. Distrib.*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).

> The employee may meet this burden in one of four ways:
> (1) the production of medical evidence that he is physically

or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Id.* (internal citations omitted).

In support of the award of ongoing benefits in this case, the Commission concluded as follows:

10. Based upon the preponderance of the evidence in view of the entire record, and as the result of his 3 September 2012 injury by accident and causally related psychological injuries, plaintiff has satisfied the first prong of *Russell* and is entitled to be paid by defendants temporary total disability compensation . . . beginning 3 September 2012 and continuing until [employee] returns to work or further Order of the Commission." (Citations omitted).

Defendants do not specifically challenge any findings, but instead contend the Commission erred in determining employee met his burden of proving ongoing disability because the only evidence related to disability in this case was a note by Dr. Dean on 27 September 2012 removing employee from work until 31 October 2012. Thus, defendants claim employee was not entitled to benefits for any period beyond 31 October 2012. We disagree.

The evidence in this case shows that Dr. Dean did initially produce a note on 27 September 2012 to excuse employee from work until 31 October 2012. Yet, Dr. Dean later testified that he wanted a psychologist to clear employee before employee returned to work. The Commission noted Dr. Dean's testimony about employee's return to work and "Dr. Dean's impression [that] Advance Auto Parts posed a 'very stressful situation' and that [employee] would relive the [robbery] if he returned to that environment" in finding of fact fifteen.

As defendants state in their brief, "[the] only testimony which supports a finding that [employee] is incapable of work in any employment as a consequence of the 3 September 2012 incident is that of Dr. Morris." Defendants, however, rely on their previous argument that Dr. Morris does not qualify as an expert and did not provide competent opinion testimony. As we have already discussed, the Commission properly designated Dr. Morris as an expert in psychology and properly accepted his opinion testimony. As to employee's return to work, the Commission made finding of fact twenty-five based on Dr. Morris' testimony. Finding of fact twenty-five provides as follows:

> 25. In his opinion, Dr. Morris does not believe [employee] will be able to return to work for Advance Auto Parts due to its association with the robbery, his life being threatened, and that he could have been killed. Dr. Morris is unable to state whether [employee] can return to any employment at this time. As Dr. Morris explained:
>
> [A]n individual with PTSD, they almost need to have

> a resting spot or like a place where they can sort of just pull everything together, reflect, because most of the time the mind is racing . . . once they arrive at that place where they feel comfortable, they feel that they're making progress, that people understand them, that their story has been heard and they've been validated, then they can move forward.

> Dr. Morris further explained that [employee] has not yet reached this point in his therapy and, until he reaches this point, the kind of employment [employee] can handle cannot be determined. Whether [employee] will be employable in the future depends upon how soon he can "resolve some of the feelings and thoughts that he has been carrying around in his head since the incident." [Employee] has not yet reached maximum medical improvement. Based upon the preponderance of the evidence in view of the entire record and Dr. Morris' testimony, the Commission finds that [employee] cannot work in any employment as a result of his psychological conditions.

Although the Commission did find that "Dr. Morris is unable to state whether [employee] can return to any employment at this time[,]" it is evident from a review of Dr. Morris' testimony that Dr. Morris' uncertainty was not concerning whether employee could return to work for another employer at that particular point in time, but whether employee would ever be able to return to work for another employer. The question asked to Dr. Morris was, "[D]o you have an opinion, based on your treatment of [employee] and your professional experience, whether [employee] would be able to return to work for another employer?" Dr. Morris responded, "I don't know yet[,]" and continued to explain the progress he needed to see in employee's therapy before he could determine if employee could return to work. When the Commission's

finding is considered with Dr. Morris' testimony, it is evident that the correct interpretation of the Commission's finding is, at the time Dr. Morris gave his testimony, he was unable to state whether employee would ever be able to return to any employment. This interpretation is further supported by consideration of finding of fact twenty-five in its entirety.

We hold finding of fact twenty-five, which is supported by the evidence, supports the Commission's conclusion that employee has satisfied the first prong of *Russell* and is entitled to continuing temporary total disability compensation.

### III.    Conclusion

For the reasons discussed, the opinion and award of the Full Commission is affirmed.

AFFIRMED.

Judges STEPHENS and ZACHARY concur.