IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-560

Filed 21 February 2023

North Carolina Industrial Commission, I.C. No. 18-035130

GLORIA GILLIAM and REX MAURICE CONNELLY, Parents of MAURICE CONNELLY, Deceased Employee, Plaintiffs,

v.

FOOTHILLS TEMPORARY EMPLOYMENT, Employer, SYNERGY INSURANCE COMPANY, Carrier, Defendants.

Appeal by Defendants and cross appeal by Plaintiffs from Opinion and Award entered 19 April 2022 by the North Carolina Industrial Commission. Heard in the Court of Appeals 10 January 2023.

> *Sellers, Ayers, Dortch & Lyons, PA, by Christian R. Ayers, John F. Ayers, III, and I. Matthew Hobbs, for Plaintiffs-Appellees.*

> *Goldberg Segalla LLP, by Gregory S. Horner and Allegra A. Sinclair, for Defendants-Appellants.*

COLLINS, Judge.

Defendants Foothills Temporary Employment and Synergy Insurance Company appeal from an Opinion and Award entered by the North Carolina Industrial Commission awarding Plaintiffs Gloria Gilliam and Rex Maurice Connelly, parents of Decedent Maurice Connelly, death benefits at a rate of $64.37 per week for

500 weeks. Defendants contend that the Commission erroneously admitted expert testimony under Rule 702 of the North Carolina Rules of Evidence, and that, absent such testimony, the Commission's findings of facts and conclusions of law are unsupported. Plaintiffs cross appeal, contending that the Commission erroneously calculated Decedent's average weekly wage under N.C. Gen. Stat. § 97-2(5). Defendants failed to preserve their argument regarding the admission of expert testimony under Rule 702. Although the Commission did not err by using the fifth method of calculating average weekly wage under N.C. Gen. Stat. § 97-2(5), the Commission erred in its calculation of Decedent's average weekly wage. We dismiss Defendant's appeal, and we vacate and remand the Opinion and Award with instructions.

## I. Procedural History and Factual Background

Decedent was an employee of Foothills Temporary Employment, a temporary employment agency that places individuals with various employers. On 15 July 2018, Decedent was assigned to work at Bimbo Bakeries, a large-scale bread-making facility, in a "general utility" position for $11.50 per hour. Bimbo Bakeries had been training Decedent in multiple areas, but on 29 July 2018 he was working on the lid line. The lid line is approximately 4 feet wide by 60 feet long and runs along a conveyor belt. Lid line workers "are generally responsible for observing that the lids are being produced efficiently, for ensuring that the type of lid being produced is

consistent with the product currently being baked, and for stacking the lids to the side of the conveyor belt in racks as appropriate during changeover periods."

On 29 July 2018, Decedent's shift began "around 4:00 or 5:00 p.m." On that day, Decedent was working on the lid line with Larry Brooks, a Bimbo Bakeries employee, and "monitoring the lids." Decedent gave Brooks a 20-minute break in the break room while he continued to work on the lid line. Leon Weaver, an oven operator for Bimbo Bakeries, spoke with Decedent a few minutes prior to his collapse: "I looked at him and I asked him, I was like, 'Are you – are you okay? You good? You need water or anything?' He said he was fine and then I just walked back down to the oven." When Brooks came back from his break, he found Decedent lying face down on the lid line platform.

Burke County EMS arrived at the scene where Decedent was "unresponsive to all stimuli," his "pupils were fixed and dilated," and he was "placed on the cardiac monitor via defibrillation pads . . . [and] found to be in Vfib." Lieutenant Nicole Carswell, a paramedic with Burke County, noted that "we defibrillated quite a few times and there was no significant change in that until we were arriving at the hospital. He stayed in defib the entire time." Decedent was pronounced dead at the hospital, and an autopsy revealed that

> [t]he cause of death is probable dysrhythmia due to cardiomegaly. Major findings at autopsy were an enlarged heart with increased concentric left ventricle thickness. An enlarged heart impairs proper coordinated electrical conduction and predisposes to a fatal arrythmia. In

> addition to the increased muscle mass, there was an increased fibrosis seen microscopically.

Plaintiffs filed a workers' compensation claim, alleging that Decedent "collapsed and died while working in high heat inside bakery." Defendants denied Plaintiffs' workers' compensation claim on the basis that Decedent "died from natural causes as ruled by OSHA and Medical Examiner." After a hearing, Deputy Commissioner Tiffany M. Smith entered an Opinion and Award, concluding that Decedent's death was compensable and ordering Defendants to pay death benefits calculated pursuant to the third statutory method of calculating average weekly wage under N.C. Gen. Stat. § 97-2(5). Defendants appealed the Opinion and Award, and the Full Commission affirmed the compensability of Decedent's death but recalculated the average weekly wage pursuant to the fifth statutory method. Defendants appealed the Commission's Opinion and Award, and Plaintiffs cross-appealed.

## II.    Discussion

### A. Expert Witness Testimony

Defendants contend that the Commission erred under Rule of Evidence 702 by admitting Dr. Owens' testimony and thus the Commission's findings of fact and conclusions of law concerning compensability are unsupported. Plaintiffs contend this issue is not preserved for our review.

Pursuant to North Carolina Industrial Commission Rule 701, an application for review of a Deputy Commissioner's opinion and award must be made within 15

days from the date notice of the opinion and award was given. Workers' Comp. R. N.C. Indus. Comm'n 701(a), 2021 Ann. R. N.C. 635-36.[1] The Commission must acknowledge the request for review by letter and within 30 days, must prepare and provide the parties involved with the official transcript and exhibits, if any, along with a Form 44 Application for Review. *Id.* Rule 701(c).

> The appellant shall submit a Form 44 Application for Review stating with particularity all assignments of error and grounds for review, including, where applicable, the pages in the transcript or the record on which the alleged errors shall be recorded. Grounds for review and assignments of error not set forth in the Form 44 Application for Review are deemed abandoned, and argument thereon shall not be heard before the Full Commission.

*Id.* Rule 701(d).

"[T]he portion of Rule 701 requiring appellant to state with particularity the grounds for appeal may not be waived by the Full Commission." *Roberts v. Wal-Mart Stores, Inc.*, 173 N.C. App. 740, 744, 619 S.E.2d 907, 910 (2005). The penalty for non-compliance with the particularity requirement on appeal to the Full Commission is waiver of the grounds. *Wade v. Carolina Brush Mfg. Co.*, 187 N.C. App. 245, 249, 652 S.E.2d 713, 715 (2007) (citations omitted). Grounds waived on appeal to the Full Commission are not preserved for this Court's review. *See Bentley v. Jonathan Piner Constr.*, 254 N.C. App. 362, 368, 802 S.E.2d 161, 165 (2017).

---

[1] The Rules of the North Carolina Industrial Commission are codified as 11 N.C. Admin. Code 23A.0701 (2021).

Defendants argue that the following assignment of error[2] in its Form 44 was sufficient to preserve its argument that the Commission erred under Rule 702 by admitting Dr. Owens' testimony: "Defendants allege error in Findings of Fact 1-2, 7-9, 21, 23-27, 34-49 as these findings are either unsupported by competent evidence, conflict with the evidence of record and/or are against the weight of the evidence taken as a whole."

However, that assignment of error is only a generalized assignment of error regarding the Commission's findings of facts that fails to state with particularity as grounds for review the admissibility of Dr. Owens' testimony under Rule of Evidence 702. *See Reed v. Carolina Holdings*, 251 N.C. App. 782, 787-88, 796 S.E.2d 102, 106 (2017) (holding that Defendants failed to preserve an issue where there was "no indication in the record that [the] issue was raised at all before the Commission prior to the Opinion and Award" and that "Defendants pleaded only a generalized assignment of error . . . ."). Furthermore, the record on appeal before this Court does not contain Defendants' brief or other document filed with the Full Commission stating with particularity as grounds for review the admissibility of Dr. Owens' testimony under Rule 702. *Cf. Cooper v. BHT Enters.*, 195 N.C. App. 363, 369, 672

---

[2] Although our Rules of Appellate Procedure no longer limit the scope of appellate review to those issues presented by assignments of error set out in the record on appeal, North Carolina Industrial Commission Rule 701(d) requires a party appealing a Deputy Commissioner's opinion and award to the Full Commission "to submit a Form 44 Application for Review stating with particularity all assignments of error and grounds for review . . . ." Workers' Comp. R. N.C. Indus. Comm'n 701(d).

S.E.2d 748, 753-54 (2009) ("Since both this Court and the plain language of the Industrial Commission's rules have recognized the Commission's discretion to waive the filing requirement of an appellant's Form 44 where the appealing party has stated its grounds for appeal with particularity in a brief or other document filed with the Full Commission, we overrule these assignments of error."). *See also Reed*, 251 N.C. App. at 789-90, 796 S.E.2d at 107-08 ("Although Defendants contend in response to the Motion to Dismiss that they stated their challenge to the Commission's authority to award attorney's fees in their brief to the Commission on appeal from the Deputy Commissioner's decision, they did not include the referenced brief in the record."). Finally, the Commission did not explicitly address in its Opinion and Award the admission of Dr. Owens' testimony under Rule 702; thus, it is not apparent that the Commission considered that ground for review. *See Adcox v. Clarkson Bros. Constr. Co.*, 241 N.C. App. 178, 186, 773 S.E.2d 511, 517 (2015). Accordingly, there is no indication in the record that the admission of Dr. Owens' testimony under Rule 702 was raised before the Commission prior to the filing of the Opinion and Award from which this appeal arises. Accordingly, that ground was abandoned before the Commission and Defendants have failed to preserve it for our review.

**B. Average Weekly Wage**

Plaintiffs contend that the Commission erred by concluding that the fifth method of calculating average weekly wage under N.C. Gen. Stat. § 97-2(5) should be applied instead of the third method. Plaintiffs further contend that even if the fifth

method is used, the Commission erroneously calculated Decedent's average weekly wage by using the earnings he accrued from 17 May 2018 to his death on 29 July 2018 rather than the earnings he would have accrued from 17 May 2018 to when he would have ceased working for Defendant-Employer in August 2018.

Review of an opinion and award of the Industrial Commission "is limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law." *Richardson v. Maxim Healthcare/Allegis Grp.*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008) (citation omitted). "The Commission's findings of fact are conclusive on appeal when supported by such competent evidence, even though there is evidence that would support findings to the contrary." *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 700 (2004) (brackets, quotation marks, and citation omitted). The Commission's conclusions of law are reviewed de novo. *Pickett v. Advance Auto Parts,* 245 N.C. App. 246, 249, 782 S.E.2d 66, 69 (2016).

### 1. *Application of the Fifth Method*

Plaintiffs contend that the Commission's decision to apply the fifth method of calculating average weekly wage was erroneous.

Whether the Commission selected the correct method of calculating average weekly wage under N.C. Gen. Stat. § 97-2(5) is a question of law that we review de novo. *Nay v. Cornerstone Staffing Sols.*, 380 N.C. 66, 85, 867 S.E.2d 646, 659 (2022). Whether a particular method of calculating average weekly wage produces "fair and

just" results is a question of fact subject to the "any competent evidence" standard. *Id.*

The calculation of average weekly wage is governed by N.C. Gen. Stat. § 97-2(5). "Subsection 97-2(5) sets forth in priority sequence five methods by which an injured employee's average weekly wages are to be computed and establishes an order of preference for the calculation method to be used . . . ." *Id.* at 77, 867 S.E.2d at 654. (citation and quotation marks omitted).

The third method of calculating average weekly wage states: "Where the employment prior to the injury extended over a period of fewer than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained." N.C. Gen. Stat. § 97-2(5) (2021). Results fair and just, within the meaning of N.C. Gen. Stat. § 97-2(5), "consist of such average weekly wages as will most nearly approximate the amount which the injured employee would be earning were it not for the injury, in the employment in which he was working at the time of his injury." *Liles v. Faulkner Neon & Elec. Co.*, 244 N.C. 653, 660, 94 S.E.2d 790, 796 (1956) (emphasis and quotation marks omitted).

The fifth method of calculating average weekly wage states: "But where for exceptional reasons the foregoing [methods of calculating average weekly wages] would be unfair, either to the employer or employee, such other method of computing

average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury." N.C. Gen. Stat. § 97-2(5). The fifth method may not be used unless there has been a finding that unjust results would occur by using one of the first four methods. *McAninch v. Buncombe Cnty. Sch.*, 347 N.C. 126, 130, 489 S.E.2d 375, 378 (1997).

Here, the Commission found, in relevant part, as follows:

> 6. Although Decedent's employment with Defendant-Employer was at-will and had no specified end date, the preponderance of the evidence demonstrates that Decedent would have ended his employment with Defendant-Employer and returned to school in August 2018. The medical record from the 11 July 2018 "Well Male Check" reflects that Decedent was "currently in grad school for sports communication at Mississippi college." Furthermore, an 18 July 2018 Facebook post authored by Decedent expressed his plan to return to school: "I'm so glad school starts in August so I don't have much longer in the bakery lol." Decedent's sister testified that Decedent was "in school" at the time of his death. Moreover, ceasing his employment to return to school in August 2018 would have followed the pattern of Decedent's work history in recent years. The Work Experience portion of Decedent's 14 May 2018 employment application with Defendant-Employer reflects that he worked for two different employers during the previous two summers before departing each August. The document reflects that Decedent worked from 8 June 2017 until 7 August 2017 and from 31 May 2016 until 1 August 2016, and on this form he indicated that he discontinued his work in those positions due to "school."
>
> 7. According to the Form 22 *Statement of Days Worked and Earnings of Injured Employee* stipulated into evidence, Decedent worked for Defendant-Employer for 64 days over a 73-day period starting 17 May 2018 and ending with his

death on 29 July 2018. Defendant-Employer's payroll records reflect that Plaintiff earned $5,021.13 during this period.

. . . .

33. Based upon the preponderance of the evidence in view of the entire record, exceptional reasons, including the limited duration of Decedent's work for Defendant-Employer and the fact that Decedent would have terminated the employment within a few weeks but for his death, the first four methods of calculating average weekly wage under N.C. Gen. Stat. § 97-2(5) are inappropriate. Given the nature of Decedent's employment with Defendant-Employer, the Full Commission finds that dividing Decedent's total earnings by 52 yields an average weekly wage which most nearly approximates what Decedent would be earning were it not for the injury.

Decedent's medical records, Facebook post, employment application, and Form 22 are competent evidence to support the Commission's findings of fact, including "that Decedent would have ended his employment with Defendant-Employer and returned to school in August 2018" and that "Decedent would have terminated the employment within a few weeks but for his death . . . ." Because Decedent began working for Defendant-Employer on 17 May 2018 and would have ceased working for Defendant-Employer in August 2018, within a few weeks of his death, Decedent's earnings from May to August would have constituted his total earnings in 2018. If Decedent's total earnings are divided by the number of weeks and parts thereof that he would have worked, this would yield an average weekly wage reflecting that Decedent would have worked for the entire year rather than just three months.

Accordingly, the Commission's findings of fact support its conclusion of law

that applying "a third method [of] calculation would be unfair to Defendants in this case in that it would overestimate the wages Decedent would have earned but for the compensable accident. The third method is therefore inappropriate in this case as it would not produce results 'fair and just to both parties.'" *See Joyner v. A. J. Carey Oil Co.*, 266 N.C. 519, 521-22, 146 S.E.2d 447, 448-49 (1966) (holding that dividing plaintiff's earnings by the number of weeks in his brief period of employment during peak season would not be fair and just where plaintiff's employment was "inherently part-time and intermittent" and did not "provide work in each of the 52 weeks of the year; some weeks the job is non-existent").

Furthermore, the Commission's findings of fact support its conclusion that the fifth method should be used:[3]

> Given the highly unusual situation presented by the facts of this case, "exceptional reasons" exist and "such other method of computing average weekly wages" "as will most nearly approximate the amount" Decedent "would be earning were it not for the injury" must be used. N.C. Gen. Stat. § 97-2(5). The fifth method of calculation under N.C. Gen. Stat. § 97-2(5) is therefore appropriate. *See Pope v. Johns Manville*, 207 N.C. App. 157, 700 S.E.2d 22 (2010).

### 2. *Calculating Average Weekly Wage under the Fifth Method*

Plaintiffs further contend that, even if the fifth method is used, the Commission erroneously calculated Decedent's average weekly wage by using his

---

[3] The Commission's conclusion of law 4 also details why the first, second, and fourth methods of calculating Decedent's average weekly wage should not be used. Plaintiffs do not argue that this portion of the Commission's conclusion was erroneous.

date of death to calculate his total earnings when there was no competent evidence that Decedent would have ceased working for Defendant-Employer on that date.

Findings of fact 6, 7, and 33, as recited above, including that "Decedent would have ended his employment with Defendant-Employer and returned to school in August 2018[,]" that "Decedent would have terminated the employment within a few weeks but for his death," and that "dividing Decedent's total earnings by 52 yields an average weekly wage which most nearly approximates what Decedent would be earning were it not for [his death]" are supported by competent evidence. However, these findings do not support the Commission's conclusion of law calculating Decedent's average weekly wage as follows:

> 5. . . . In the case at bar, the evidence shows that Decedent earned $5,021.13 during his summer employment with Defendant-Employer. This figure divided by 52 yields an average weekly wage of $96.56. This average weekly wage most nearly approximates the amount Decedent would be earning were it not for the injury. This average weekly wage yields a corresponding weekly workers' compensation rate of $64.37. N.C. Gen. Stat. §§ 97-2(5); 97-38 (2021).

Because there is no evidence that Decedent would have ceased working for Defendant-Employer on 29 July 2018 but for his death, using the $5,021.13 Decedent earned from 17 May 2018 to 29 July 2018 as his "total earnings" to calculate his average weekly wage underestimates the wages Decedent would have earned but for the compensable accident. Instead, using the amount Decedent would have earned from 17 May 2018 to the date he would have ceased working for Defendant-Employer

in August 2018 as his "total earnings," and dividing that figure by 52, yields an average weekly wage that most nearly approximates the amount Decedent would be earning were it not for his death.

Accordingly, the Commission erroneously calculated Decedent's average weekly wage under the fifth method by using the "total earnings" he accrued from 17 May 2018 to 29 July 2018 rather than the "total earnings" he would have accrued had he worked from 17 May 2018 to August 2018, within a few weeks of his death.

## III.   Conclusion

Defendants did not properly preserve their argument that Dr. Owens' testimony was inadmissible, and we therefore dismiss Defendants' appeal. The Commission did not err by concluding that the third method of calculating Decedent's average weekly wage under N.C. Gen. Stat. § 97-2(5) would not produce results "fair and just to both parties" in that it would overestimate the wages Decedent would have earned but for the compensable accident. As such, the Commission did not err by concluding that the fifth method of calculation under N.C. Gen. Stat. § 97-2(5) is appropriate.

However, the Commission erred under the fifth method in calculating Decedent's average weekly wage by using his "total earnings" from 17 May 2018 to 29 July 2018 instead of the "total earnings" he would have accrued had he worked until August 2018. Accordingly, we vacate the Commission's Opinion and Award and remand with the following instructions: find, based on competent evidence, the date

Decedent would have ended his employment with Defendant-Employer, had he not died; determine Decedent's "total earnings" based on his start date of 17 May 2018 and the date Decedent would have ended his employment with Defendant-Employer; calculate Decedent's average weekly wage by dividing Decedent's "total earnings" by 52; enter a new opinion and award consistent with these findings and conclusions.

DISMISSED IN PART; VACATED AND REMANDED WITH INSTRUCTIONS IN PART.

Chief Judge STROUD and Judge ZACHARY concur.